Filed 10/24/13  Cunningham v. Coombs CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ARCHIBALD CUNNINGHAM,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MICHAEL COOMBS et al.<br><br>    Defendants and Respondents. | A134206, A134759<br><br>(San Francisco City & County<br>Super. Ct. No. CGC-11-511994) |

Plaintiff Archibald Cunningham has filed two appeals, which we consolidated by order filed on July 25, 2012.  In the first, case No. A134206, he argues we must reverse the court's order dismissing his action against defendants John Scott McKay, Michael Coombs, and Tamara Woods for plaintiff's failure to furnish security as ordered by the court pursuant to Code of Civil Procedure section 391.1 of the vexatious litigant statutes.[1] Plaintiff primarily argues that represented parties are not subject to this "furnish security" remedy in light of our Supreme Court's analysis in *Shalant v. Girardi* (2011) 51 Cal.4th 1164 (*Shalant*).

In the second appeal, case No. A134759, plaintiff argues we must reverse the trial court's order awarding defendants Coombs and Woods, as prevailing parties, $27,000 in attorney fees as a part of their costs.  He primarily contends there is no contractual or other basis for such an award, given that the court dismissed the action pursuant to the vexatious litigant statutes.

---

[1] All statutory references in this opinion are to the Code of Civil Procedure unless otherwise stated.

1

We find no merit in plaintiff's arguments and affirm the orders appealed from in their entirety.

## BACKGROUND

### *Plaintiff's Causes of Action Against Defendants*

In June 2011, plaintiff, through legal counsel, Patrick Missud, filed a complaint for damages against defendants John Scott McKay, Michael Coombs, and Tamara Woods. Plaintiff also sued Judge Charlotte Walter Woolard and Judge Loretta M. Giorgi, both of the Superior Court for the City and County of San Francisco.[2]

In one cause of action against all three defendants, plaintiff alleged defendant McKay, as legal counsel for defendants Coombs and Woods and on their behalf, engaged in various acts of fraud and intentional deceit in a prior action, in which defendants had won an arbitration award against plaintiff in a residential property dispute that had been confirmed by the superior court.[3]  These included three sets of purported intentional misrepresentations:  (1) to plaintiff, in April 2010, that defendants Coombs and Woods were not interested in litigating so as to induce plaintiff not to take legal action against them; (2) to the court, in September 2010, in moving to compel arbitration that a 2007 "TIC Agreement" (TICA) was the one and only agreement between plaintiff and defendants Coombs and Woods, while concealing the superseding "CC&Rs and Bylaws" (CC&Rs); and (3) to the court, in April 2011, in moving to confirm the arbitration award and opposing plaintiff's motion to vacate it, regarding why the TICA had not terminated and plaintiff had not fulfilled his obligations under it.

In another cause of action against defendant Coombs and Woods only, plaintiff alleged they had breached the CC&Rs in various ways.

Another cause of action "for declaratory relief" was brought against all defendants, but it sought injunctive relief against the judicial defendants only.  Plaintiff sought general, special and punitive damages, as well as attorney fees and costs.

---

[2]  The subject of appellant's dispute with these judicial defendants is not a part of this appeal and, therefore, we do not discuss it further.

[3]  This prior action is the subject of another appeal by plaintiff, case No. A131914.

### *The Court's Order Pursuant to the Vexatious Litigant Statutes*

Defendants moved pursuant to section 391.1 for an order that plaintiff furnish security in the amount of $75,000, contending he was a vexatious litigant as defined in section 391, and had no reasonable likelihood of prevailing in the action. Defendants submitted evidence via declarations to prove these two criteria were met. Defendants also moved pursuant to section 391.7, subdivision (a), for an order prohibiting plaintiff from filing any new lawsuits in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed.

Regarding their "furnish security" motion, defendants contended plaintiff met the statutory definition of a "vexatious litigant" because he had commenced, prosecuted, or maintained in propria persona at least five litigations in the preceding seven years (§ 391, subd. (b)(1)) and had, while acting in propria persona in litigation, repeatedly filed unmeritorious motions, pleadings or other papers, conducted unnecessary discovery, or engaged in other tactics that were frivolous or solely intended to cause unnecessary delays (§ 391, subd. (b)(3)).

Defendants contended plaintiff had no reasonable probability of prevailing in his claims against them. They asserted McKay had not made any misrepresentations, he had only expressed to the court his legal opinion that the TICA was valid, and, in any event, plaintiff could not prove justifiable reliance on anything McKay had said. Also, plaintiff's breach of the CC&Rs claim lacked factual or legal bases and was barred by the doctrine of res judicata because it raised the same issues as plaintiff's defenses in the prior action. Defendants suggested plaintiff be ordered to furnish security in the amount of $75,000.

Plaintiff, in his written opposition, did not contest defendants' showing that he was a vexatious litigant without a reasonable probability of prevailing in the litigation. He argued only that he was not subject to the security provisions of the vexatious litigant statutes because he was represented by counsel, Missud, who had filed the action on plaintiff's behalf.

3

Defendants replied that the court should not consider plaintiff's opposition because it was late, and could order a represented party to furnish security pursuant to section 391.1.

At the hearing on defendants' motion, plaintiff, through his counsel, Missud, asserted various matters related to the substance of plaintiff's complaint, such as that plaintiff, rather than being a vexatious litigant, was "trying to redress the original wrong. He was compelled into arbitration, and there was absolutely no justification to do so." Missud argued defendants' motion was an effort to "chill [plaintiff's] right to speech, and to limit his right to redress his grievance, and to court access." Plaintiff objected to "every part of [the motion], on all grounds," but specifically asserted only that plaintiff could not furnish $75,000 of security; the vexatious litigant statute applied only to litigants appearing in propria persona; and plaintiff, having been treated unjustly in the original ruling that compelled arbitration, was entitled to address this original wrong.

Missud also informed the court for the first time that plaintiff wanted to be called as a witness. The court denied this request, but allowed Missud to make an offer of proof for the record.

Following the hearing, the court granted defendants' motion. It ruled that plaintiff's opposition was untimely filed. It also rejected plaintiff's argument that legal representation shielded him from vexatious litigant orders. The court concluded his legal representation "was only relevant insofar as it allows him to initiate litigation *through his counsel* without obtaining leave from the presiding judge," based largely on the statement in *Flores v. Georgeson* (2011) 191 Cal.App.4th 881 (*Flores*) that "[r]etaining counsel does not insulate a vexatious litigant from an order to post security, but being represented by counsel does allow a vexatious litigant who is subject to a prefiling order to initiate litigation without first obtaining leave from the presiding judge." (*Id*. at p. 886.) The court also concluded plaintiff "had not adequately rebutted the ample showing that he is a vexatious litigant and has not presented any relevant evidence or authorities suggesting that he has a reasonable likelihood of prevailing on the merits." The court ordered plaintiff to furnish security in the amount of $50,000 within 10 days of service of the

4

order or face dismissal of the action pursuant to sections 391.3 and 391.4, and prohibited plaintiff from filing any new lawsuits in propria persona without first obtaining leave of the presiding judge.

### The Court's Dismissal of the Action

Defendants subsequently moved for dismissal of the action on the ground that plaintiff did not furnish security as ordered. Plaintiff, mistakenly asserting the court ordered him to furnish security pursuant to section 391.7 rather than section 391.1, objected that a prefiling order could not be imposed on him as a party represented by counsel, Missud, and could not "dismiss the case for failing to comply with an invalid prefiling order." Also, he asserted, the court's security requirement "effectively precludes Missud from representing his client. This is tantamount to a de facto debarment . . . ." The court's imposition of a prefiling order, plaintiff argued, violated his "right to have counsel, his right to petition grievances under the [First] Amendment, his right to be heard under the [Fourteenth] Amendment, but it also acts as a de facto [disbarment] of an attorney, which trial judges are without authority to impose."[4]

At the hearing on defendants' motion, Missud argued mostly that plaintiff should not be considered a vexatious litigant because he had been deemed a vexatious litigant in family court, not civil court. He did not otherwise argue that plaintiff's failure to comply with the court's order should be excused.

The court granted defendants' motion to dismiss, ordered the action dismissed, and awarded defendants their costs of suit. Plaintiff filed a timely notice of appeal, which appeal is case No. A134206.

### The Court's Award of Attorney Fees to Defendants Coombs and Woods

Defendants Coombs and Woods subsequently moved to fix the amount of attorney fees as an item of costs, on the ground that they were entitled to recover these fees as part of their costs of suit. Plaintiff opposed the motion. After hearing, the court granted

---

[4] Plaintiff also apparently moved to strike costs and sought sanctions against defendants for filing a frivolous attorney fee motion, but this motion is not contained in the record.

5

defendant's motion, ordering that Coombs and Woods were entitled to recover $27,000 from plaintiff for prejudgment attorney fees. Plaintiff filed a timely notice of appeal from this order, which appeal is case No. A134759.

### Defendants' "Furnish Security" Motions in this Court

Early in both of these appeals, defendants moved in this court for orders requiring appellant to furnish security as a vexatious litigant pursuant to Code of Civil Procedure section 391.1 After consolidating the appeals and conducting a hearing, we denied these motions by order filed on October 16, 2012, concluding that defendants, the moving parties, had not met their burden of establishing that there is not a reasonable probability that plaintiff would prevail in the subject appeal. (§ 391.1.)

Missud filed the opening briefs for plaintiff in case Nos. A134206 and A134759. On September 19, 2012, plaintiff filed substitutions of counsel in both cases, substituting himself for Missud, and appeared in propria persona at the hearing on defendants' "furnish security" motions. Plaintiff filed his consolidated reply brief in propria persona and appeared in propria persona at argument.

### DISCUSSION

### I. *Case No. A134206*

**A.** *A Represented Party Is Subject to the "Furnish Security" Provisions of the Vexatious Litigant Statutes*

In case No. A134206, plaintiff primarily argues the court erred in ordering him to furnish security pursuant to sections 391.1 to 391.6 because, as a represented party, he was not subject to these provisions. We reject the argument.

Defendants moved below for an order that plaintiff furnish security pursuant to section 391.1, which states: "In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security. The motion must be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he will prevail in the litigation against the

moving defendant." (§ 391.1.) The terms "litigation," "vexatious litigant," "security," "plaintiff," and "defendant" are each defined in section 391.[5]

" 'The burden of establishing the [section 391.1] statutory condition is on the party moving for security.' " (*Muller v. Tanner* (1969) 2 Cal.App.3d 445, 464 (*Muller II*).)

---

[5] Section 391 states that "as used in this title, the following terms have the following meanings:

"(a) 'Litigation' means any civil action or proceeding, commenced, maintained or pending in any state or federal court.

"(b) 'Vexatious litigant' means a person who does any of the following:

"(1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing.

"(2) After a litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined.

"(3) In any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay.

"(4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence.

"(c) 'Security' means an undertaking to assure payment, to the party for whose benefit the undertaking is required to be furnished, of the party's reasonable expenses, including attorney's fees and not limited to taxable costs, incurred in or in connection with a litigation instituted, caused to be instituted, or maintained or caused to be maintained by a vexatious litigant.

"(d) 'Plaintiff' means the person who commences, institutes or maintains a litigation or causes it to be commenced, instituted or maintained, including an attorney at law acting in propria persona.

"(e) 'Defendant' means a person (including corporation, association, partnership and firm or governmental entity) against whom a litigation is brought or maintained or sought to be brought or maintained.

7

The trial court exercises its discretion in determining whether a person is a vexatious litigant. In order to determine whether a plaintiff has a "reasonable probability" of success, a court "performs an evaluative function in the section 391.1 hearing," which includes weighing the evidence. (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 786 (*Moran*).) "[T]he statute does not require formal findings." (*Devereaux v. Latham & Watkins* (1995) 32 Cal.App.4th 1571, 1582, disapproved of on another ground in *Moran*, at p. 785, fn. 7.)

We uphold the trial court's ruling if it is supported by substantial evidence. On appeal, we presume the order is correct and infer findings necessary to support the judgment. We review questions of statutory interpretation de novo. (*Fink v. Shemtov* (2010) 180 Cal.App.4th 1160, 1169.)

Plaintiff's "represented party" argument relies largely on our Supreme Court's ruling in *Shalant*, *supra*, 51 Cal.4th 1164 that a represented party is not subject to the *prefiling* provisions of section 391.7. *Shalant* does not avail plaintiff here. Shalant had previously been found to be a vexatious litigant subject to a prefiling order under section 391.7, which " 'prohibits a vexatious litigant from filing any new litigation in propria persona without first obtaining permission from the presiding judge.' " (*Shalant*, at pp. 1168, 1170; § 391.7, subd. (a).) Shalant filed a new action through legal counsel, but, while it was pending, lost this representation and proceeded in propria persona without obtaining permission from the presiding judge. The court subsequently granted the defendants' motions to dismiss Shalant's complaint for failure to comply with section 391.7. The appellate court reversed. The Supreme Court granted the defendants' petition for review and ultimately agreed with the Court of Appeal, but not on any basis offering solace to plaintiff. (*Shalant*, at p. 1169.)

The *Shalant* court observed that the vexatious litigant statutes, sections 391 to 391.7, are "designed to curb abuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants." (*Shalant*, *supra*, 51 Cal.4th at p. 1169.) It identified two different sets of remedies in the statutes. Sections 391 to

8

391.6, the court observed, were enacted in 1963.  They provide that in any pending litigation a defendant can move for an order requiring the plaintiff to furnish security on the grounds the plaintiff is a vexatious litigant with no reasonable probability of prevailing against the moving defendant.  If, after hearing, the court finds for the defendant, it is required to order the plaintiff to furnish security as determined by the court and, if plaintiff does not do so, dismiss the action.  (*Shalant*, at p. 1170; §§ 391.1, 391.3-391.6.)

The second remedy is contained in section 391.7, added by the Legislature in 1990 " 'to provide the courts with an additional means to counter misuse of the system by vexatious litigants.' "  (*Shalant*, *supra*, 51 Cal.4th at p. 1171.)  It operates " ' "beyond the pending case," ' " authorizing a court to enter a prefiling order.  (*Ibid*.)  It "did not displace the remedy provided in sections 391.1 to 391.6 for defendants in pending actions . . . .  [Citation.]  Rather, it added a powerful new tool designed 'to preclude the initiation of meritless lawsuits and their attendant expenditures of time and costs.' "  (*Ibid*.)

The *Shalant* court considered these two different remedies as "distinct and complementary."  (*Shalant*, *supra*, 51 Cal.4th at p. 1171.)  "In *pending* litigation, a defendant may have the plaintiff declared a vexatious litigant and, if the plaintiff has no reasonable probability of prevailing, ordered to furnish security.  If the plaintiff fails to furnish the security, the action will be dismissed.  (§§ 391.1–391.6.)  In addition, a potential defendant may prevent the vexatious litigant plaintiff from filing any new litigation in propria persona by obtaining a prefiling order and, if any new litigation is inadvertently permitted to be filed in propria persona without the presiding judge's permission, may then obtain its dismissal.  (§ 391.7.)"  (*Ibid*.)

The *Shalant* court concluded the defendants in that case "pursued the wrong statutory remedy for the situation in which they found themselves."  (*Shalant*, *supra*, 51 Cal.4th at p. 1171.)  Shalant had not violated any prefiling order because he filed the action through counsel, and the trial court erred in granting defendants' motions to dismiss.  (*Ibid*.)  "Defendants could have proceeded under section 391.1 for an order requiring Shalant to post adequate security before continuing to prosecute his action

9

against them, making it subject to dismissal under section 391.4 if he failed to do so.  On remand, they may still pursue this remedy.  They could not, however, properly seek dismissal under section 391.7, as it governs only the *filing* of new litigation, and the present action, filed as it was through counsel, did not violate the section 391.7 prefiling order against Shalant."  (*Id*. at p. 1172.)

The *Shalant* court specifically disapproved of *Forrest v. Department of Corporations* (2007) 150 Cal.App.4th 183, to the extent it held section 391.7 applies to acts other than the filing of new litigation in propria persona, doing so based on a "plain language reading of section 391.7."  (*Shalant*, *supra*, 51 Cal.4th at pp. 1172-1173, fns. 3, 4.)  The court emphasized that, "[i]f . . . the plaintiff is able to file the action through counsel, sections 391.1 to 391.6 continue to provide a remedy against the plaintiff's unjustifiable behavior in the pending case."  (*Id*. at p. 1173.)

The *Shalant* court also was not persuaded by the defendants' argument that section 391.7, by its plain language, would allow a vexatious litigant to easily evade the statute by finding a lawyer willing to file the complaint and then substitute out of the case.  The court could not assume, "contrary to the evident premise of section 391.7, that attorneys generally will fail to act as gatekeepers against frivolous litigation" because they are governed by prescribed rules of ethics and professional conduct, subject to disbarment and other disciplinary actions not applicable to litigants in propria persona, rely on their reputation in the community to sustain their careers, and are subject to the threat of malicious prosecution liability for bringing an unmeritorious action.  (*Shalant*, *supra*, 51 Cal.4th at p. 1176.)

The *Shalant* court emphasized its holding was based on its obligation to follow the unambiguous language of section 391.7.  "Even if a broader rule, barring vexatious litigants from filing or *maintaining* new litigation in propria persona, would serve the statute's purposes better by ending more frivolous litigation more quickly, we have no warrant to ignore section 391.7's unambiguous language in favor of such a rule.  As the appellate court below remarked:  'We sympathize with the plight of already overburdened trial courts that are forced to contend with the abusive conduct of vexatious

10

litigants. But in their efforts to deal with the problem of vexatious litigants, courts must observe the limits set by the applicable statutory scheme. If those limits are too confining, then it is the function of the Legislature, not the courts, to expand them.' As already noted, defendants here may avail themselves of the remedy under sections 391.1 to 391.6, applicable to pending actions, by seeking an order that Shalant post security to continue his prosecution of this action." (*Shalant*, *supra*, 51 Cal.4th at p. 1176.)

Contrary to plaintiff's assertion, *Shalant* supports *defendants'* right to seek a "furnish security" order, whether or not plaintiff is represented. The *Shalant* court focused on the contours of the prefiling order remedy, which application is expressly limited to parties appearing in propria persona (§ 391.7, subd. (a)), but repeatedly indicate the "furnish security" remedy was available to defendants during the pendency of an action. The court's indication that defendants could pursue the "furnish security" remedy on remand does not decide the question before us, however, because the court could have presumed Shalant would continue to appear in propria persona. Nonetheless, a close reading of the opinion indicates the court considered the furnish security remedy available *whether or not* a plaintiff was represented. Specifically, as we have indicated, the court stated, "If, as here, the plaintiff *is able to file the action through counsel*, sections 391.1 to 391.6 *continue to provide a remedy* against the plaintiff's unjustifiable behavior in the pending case." (*Shalant*, *supra*, 51 Cal.4th at p. 1173, italics added.) This undermines plaintiff's interpretation of *Shalant* as favoring his view that represented parties are not subject to the "furnish security" remedy.

Plaintiff's argument is further undermined by the three appellate courts that have addressed the issue, all of which concluded that represented vexatious litigants are subject to the "furnish security" remedy. In *Muller v. Tanner* (1969) 2 Cal.App.3d 438 (*Muller I*), the trial court ordered a plaintiff, Muller, appearing in propria persona, to furnish security. (*Id.* at p. 441.) Rather than do so, Muller filed a second action signed by an attorney; the trial court sustained a demurrer and dismissed the action as a sham, fictitious, and without merit under its inherent powers. (*Id.* at pp. 440-442.) Our colleagues in Division One affirmed, holding that Muller's use of an attorney to file the

11

second action "avail[ed] him naught" because "[t]he provisions of the vexatious litigant statute, which the court acted to protect in this action, *do not preclude a stay or dismissal because an attorney is used in the action in which the motion is made*. [Citations.] Therefore, the use of an attorney in this case should not deprive the court of the power to protect itself from abuse of the judicial process." (*Id*. at p. 444, italics added.)

The issue was even more extensively addressed in *Camerado Ins. Agency, Inc. v. Superior Court* (1993) 12 Cal.App.4th 838 (*Camerado*). The defendant brought a "furnish security" motion pursuant to section 391.1 against a represented plaintiff. (*Camerado*, at p. 840.) The *Camerado* court reviewed the trial court's denial of the motion because the vexatious litigant statute "implicitly applies only to litigants acting in propria persona in the civil action in which the vexatious litigant motion is brought." (*Ibid*.) After a thorough review, the *Camerado* court concluded this was "inconsistent with the plain language of the statute, its legislative history, policy, case law and commentary." (*Ibid*.)

Consistent with the textual analysis employed by the *Shalant* court, the *Camerado* court first looked to " ' "the usual, ordinary import of the language" ' " of sections 391 to 391.6, because " ' "[i]f the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." ' " (*Camerado*, *supra*, 12 Cal.App.4th at p. 841.) After reviewing section 391.1 and the definitions for "plaintiff" and "vexatious litigant" contained in section 391 (*Camerado*, at p. 841), the court concluded: "The language of this statute leaves little room for interpretation. The defendant who moves for security must prove the plaintiff is a vexatious litigant. A plaintiff is a person who commences, institutes or maintains a litigation. *The Legislature defined a plaintiff as a person, not as a person acting in propria persona.* A vexatious litigant is a person who engages in, or has engaged in, any of the four types of conduct specified in section 391, subdivision (b). Of the four defining acts that transform a plaintiff into a vexatious litigant, each refers to acts committed while the person was in propria persona. . . . A plain reading of the statute indicates the Legislature intended it to apply, at least as to the first and fourth described

12

acts (§ 391, subd. (b)(1) and (b)(4)), *to persons currently represented by counsel* whose conduct was vexatious when they represented themselves . . . ."[6] (*Id.* at p. 842, italics added, fn. omitted.)

The *Camerado* court found support for its conclusion beyond the plain language of the vexatious litigant statutes. It was consistent with the legislative purpose and history of the vexatious litigant statutes. (*Camerado*, *supra*, 12 Cal.App.4th at p. 842.) Indeed, the *Muller* court reached the same conclusion, and the Legislature was presumably aware of *Muller* when it reenacted section 391, subdivision (b)(1) without substantive changes as part of the 1990 amendments to the vexatious litigant statutes. (*Camerado*, at p. 843.) In addition, the 1990 amendments changed the definition of "plaintiff" to include "an attorney at law acting in propria persona." (§ 391, subd. (d).) The court thought this was done "to make plain that section 391 does not apply to opposing counsel, who is also a person who 'commences, institutes or maintains a litigation or causes it to be commenced, instituted or maintained,' and thus otherwise would fall within the definition of 'plaintiff.' " (*Camerado*, at p. 844.) Last, the Legislature's addition of the prefiling order remedy for plaintiffs appearing in propria persona was not inconsistent with the broad reach of the vexatious litigant statutes. (*Ibid.*)

Finally, and as the trial court indicated in its order granting defendants' motion below, *Flores*, *supra*, 191 Cal.App.4th 881 provides support for defendants' view. *Flores* dealt primarily with the contours of the "prefiling order" remedy outlined in section 391.7, concluding it did not apply to represented parties. However, in comparing the "prefiling order" remedy with the "furnish security" remedy, the *Flores* court indicated the latter applied to represented parties, based on *Camerado*. (*Flores*, at p. 886.)

We agree with the analyses and conclusions in these cases, particularly the thorough analysis of the *Camerado* court. Most importantly, the plain language of section 391.1, which governs the court's application of the "furnish security" remedy, as

---

[6] Defendants contended below that plaintiff qualified as a vexatious litigant pursuant to section 391, subdivision (b)(1), among other things.

well as the definitions contained in section 391 for terms used in section 391.1, i.e., "plaintiff" and "vexatious litigant," do not limit the application of this remedy to plaintiffs appearing in propria persona. It applies to represented parties as well.

Plaintiff emphasizes that the *Shalant* court's analysis was based on the "plain language" of section 391.7, and cautioned courts to "observe the limits set by the applicable statutory scheme." (*Shalant*, *supra*, 51 Cal.4th at pp. 1173, fn. 4, 1176.) However, plaintiff does not offer a plain language reading of section 391.1 that shows represented parties cannot be required to furnish security, nor does he distinguish *Camerado*'s textual analysis effectively. Plaintiff's "plain language" argument is unpersuasive.

Plaintiff also emphasizes the *Shalant* court's rejection of the argument that section 391.7 should apply to plaintiffs who lose representation during the pendency of a case because otherwise unscrupulous parties could evade the statute's purpose by retaining attorneys merely to file the action. As plaintiff points out, the *Shalant* court considered this unlikely because of the "evident premise" of the statute that attorneys "act as gatekeepers against frivolous litigation." (*Shalant*, *supra*, 51 Cal.4th at p. 1176.) According to plaintiff, "[t]o allow the lawyer to file without 'permission' under [section] 391.7 on behalf of his vexatious client because he/she is presumed to be an ethical 'gatekeeper' but then subject him/her to a 'vexatious litigant' hearing under [section] 391.1 or the requirement for security would result in pure contradiction," since the attorney could file the suit but nonetheless face the risk of a dismissal at any time during the pendency of the action.

Along these same lines, plaintiff argues, subjecting represented parties to the "furnish security" remedy would "invite unethical gamesmanship" by defendants' attorneys, who could "try to dreg [*sic*] up grounds for having the 'plaintiff' once again declared 'vexatious' " at the beginning of an action, thereby adding "a new layer of litigation onto the underlying suit" filed by the plaintiff. Plaintiff claims this would at best turn the vexatious litigant statues "into some legal strategy that an unethical 'defendant's lawyer would use as a defense to a weak case.' "

14

Plaintiff's arguments are unpersuasive for three reasons. First, the *Shalant* court's "gatekeeper" discussion was limited to section 391.7, and presented both before and after the court emphasized its construction was based on the plain language of the statute. *Camerado*, of course, does the same textual analysis. As the *Shalant* court pointed out, if the limits of the statute are too confining, " 'it is the function of the Legislature, not the courts, to expand them.' " (*Shalant*, *supra*, 51 Cal.4th at p. 1176.) We have no authority to interpret the vexatious litigant statutes based on the policy considerations urged by plaintiff in the face of their unambiguous language.

Second, there is no contradiction in holding that represented parties are subject to the "furnish security" remedy, but not the "prefiling order" remedy. As the *Shalant* court indicated, the remedies are "distinct and complementary." (*Shalant*, *supra*, 51 Cal.4th at p. 1171.) Plaintiff ignores that, unlike the "prefiling order" remedy, the "furnish security" remedy does not result in dismissal of the action; rather, after hearing, if a represented party is found to be a vexatious litigant, that party can only be ordered to furnish an appropriate amount of security—and only if the moving party establishes the plaintiff does not have a reasonable probability of prevailing in the litigation. (§§ 391.1-391.3.) Dismissal occurs only if this security is not furnished. (§ 391.4.) Thus, this remedy is more limited than the "prefiling order" remedy, and can only be applied after a hearing is held and factual determinations are made. Indeed, these higher hurdles for defendants seeking a "furnish security" order may be explained by the fact that plaintiffs subject to the "furnish security" remedy include those represented by counsel.

Third, we see little chance that a defendant's attorney would use the "furnish security" remedy improperly when he or she has a weak case. This makes little sense because the attorney is required to show the *plaintiff's* case is weak in order to obtain the remedy.

Next, plaintiff argues that holding a represented party is subject to the "furnish security" remedy would "render the plain language of the second sentence of [section] 391.7[, subdivision] (b) ambiguous." It provides, "The presiding justice or presiding judge may condition the filing of the litigation upon the furnishing of security for the

15

benefit of the defendants as provided in Section 391.3." (§ 391.7, subd. (b).) According to plaintiff, "[r]eading the [vexatious litigant statutes] as a 'collective whole,' together with [section] 391.3 and with *Shalant* in mind, this second sentence would only make sense if the 'filing' were 'in propria persona,' not by a represented vexatious [litigant]." While we agree the filing is in propria persona—that is, after all, expressly indicated in section 391.7—we fail to see why this should matter in our analysis of the "furnish security" remedy provided for in sections 391.1 to 391.6.

Plaintiff also argues we should not rely on *Muller I*, *supra*, 2 Cal.App.3d 438 because it was one of two exceptional cases[7] in which courts determined counsel were acting as mere puppets for their vexatious clients, and also broadly interpreted the vexatious litigant statutes before the Supreme Court's caution against doing so in *Shalant*. While the discussion in *Muller I* implies Muller's attorney was only signing the complaint, the court's discussion of the vexatious litigant statutes does not hinge on this implication, but instead appears to be a reading of the plain language of the statute. Again, plaintiff's argument is unpersuasive.

Finally, plaintiff argues that applying the vexatious litigant statutes to a represented plaintiff violates the fundamental constitutional rights of both him and his attorney under the First and Fourteenth Amendments of the federal Constitution. These arguments fail for myriad reasons.

Plaintiff's constitutional arguments are particularly unpersuasive because he does not even cite, much less discuss, legal authority that relates to his particular claims. He does not cite any case from the courts of our state. Of the two cases he does cite, he fails to discuss the relevance of one, *Boddie v. Connecticut* (1971) 401 U.S. 371, which does

---

[7] The second case, *In re Shieh* (1993) 17 Cal.App.4th 1154, is distinguishable from the present case. As plaintiff points out, it involved a court's determination that plaintiff, although represented, could nonetheless be subject to a prefiling order pursuant to section 391.7 because the attorneys who ostensibly represented him served as mere puppets. (*In re Shieh*, at pp. 1167-1168.) Defendants made no such contention about plaintiff's counsel Missud. Although the trial court cited *In re Shieh*, it relied more on *Flores*, *supra,* 191 Cal.App.4th 881 for its ruling.

not even discuss vexatious litigants. And he neglects to consider the irrelevant circumstances involved in the other, in which a federal court imposed limitations directly on a representing attorney, which the Ninth Circuit, without engaging in any constitutional analysis, held was improper because the attorney was not a litigant. (*Weissman v. Quail Lodge, Inc.* (9th Cir. 1999) 179 F.3d 1194, 1197.)

As to plaintiff's claims about his own rights, as defendants point out the vexatious litigant statutes have withstood various constitutional challenges. (See *Muller II*, *supra*, 2 Cal.App.3d at pp. 449-454; *Taliaferro v. Hoogs* (1965) 236 Cal.App.2d 521; see also *Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 222 ["[v]exatious litigant statutes are constitutional and do not deprive a litigant of due process of law"]). These rejected challenges include that the statutes purportedly impose unreasonable terms upon which the state will permit litigation in its courts. (*Taliaferro*, at p. 528.) Plaintiff's contention that his right of access is infringed upon by the statutes is unpersuasive in light of this authority.

As to the rights of his legal counsel, Missud, plaintiff argues the trial court's construction of the vexatious litigant statutes denied Missud the fundamental right to practice law and acted as de facto discipline of him. Putting aside questions we have about plaintiff's standing to make such an argument, we disagree with the factual premise: the statute in question, section 391.1, does not authorize, nor did the trial court issue, any order relating to Missud, let alone discipline him. The court's order did not impede Missud's ability to practice law, but only required that one of his clients—found to be a vexatious litigant without a reasonable probability of prevailing in the litigation—to furnish security in order for the case to proceed. Plaintiff does not explain how this order violated any of Missud's constitutional rights.

Plaintiff also argues certain matters based on the depublished appellate court opinion, *Shalant v. Girardi* (2011) 183 Cal.App.4th 554. We disregard these arguments because the opinion was depublished when the Supreme Court granted review. The use of a depublished case is absolutely prohibited by the California Rules of Court, which authorizes reference to unpublished opinions only in a

17

narrow set of circumstances, none of which applies here.  (*People v. Williams* (2009) 176 Cal.App.4th 1521, 1529; Cal. Rules of Court, rule 8.1115.)

In short, we affirm the trial court's ruling that plaintiff, even though represented by counsel, was subject to the "furnish security" remedy in the vexatious litigant statutes, sections 391.1 to 391.6.

## B. *Plaintiff's Other Claims Lack Merit*

Plaintiff argues the procedures employed, and findings made, by the trial court in determining defendants' "furnish security" motion were improper, an argument that asserts several claims of error:  (1) his rights to due process were violated by his "retrial" as a vexatious litigant and a lack of notice that the court would subject him, as a represented party, to the "furnish security" remedy; (2) the court considered "unsworn statements" by McKay, without allowing cross-examination, at the hearing; (3) the court improperly denied plaintiff's request to testify at the hearing; (4) the court improperly determined plaintiff was not likely to prevail based solely on affidavits in violation of the Evidence Code and his due process rights, and on mischaracterizations of the prior action by McKay; and (5) a number of previous litigations cited by defendants did not support the court's finding that he was a vexatious litigant.

Defendants argue plaintiff has waived virtually all of these arguments by not raising them first below and/or making conclusory arguments unsupported by law or citations to the record and that, in any event, they have no merit.  We agree with defendants.

### 1. *General Rules of Appellate Review*

As pointed out by defendants, there are black-letter rules of appellate review relevant to our consideration of plaintiff's claims here.  " 'A judgment or order of the lower court is *presumed correct*.  All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.  This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' "  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).)

18

"It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal." (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [regarding matters not considered or ruled on by the trial court] (*Ochoa*).) Furthermore, as we stated recently, " ' "[t]he rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal." ' " (*Benjamin, Weill & Mazer v. Kors* (2011) 195 Cal.App.4th 40, 53 (*Benjamin, Weill & Mazer*), quoting *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12.) Although we have the discretion to consider a purely legal question that rests on an uncontroverted record that could not have been altered by the presentation of additional evidence (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501), we decline to exercise this discretion here because " ' "to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." ' " (*Benjamin, Weill & Mazer*, at pp. 53-54.)

As for the briefs submitted, we disregard factual assertions and legal arguments for which proper support is not provided. "A reviewing court must accept and is bound by the record before it [citations], cannot properly consider matters not in the record [citations], and will disregard statements of alleged facts in the briefs on appeal which are not contained in the record." (*Weller v. Chavarria* (1965) 233 Cal.App.2d 234, 246 (*Weller*).) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) "[C]onclusory claims of error will fail." (*Ibid.*) We may consider factual or legal claims that are unsupported by citations to the record or legal authority as waived. (*Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1379 (*Grant-Burton*) [regarding unsupported factual assertions]; (*People v. Stanley* (1995) 10 Cal.4th 764, 793 (*Stanley*) [regarding unsupported legal arguments].)

**2.  *Waiver***

As defendants point out, plaintiff, other than requesting that he be allowed to testify at the hearing on defendants' motion regarding certain matters, did not raise below any of his due process, Evidence Code, or other vexatious litigant statutes claims. He does not contend otherwise, nor does he argue why we should consider these claims despite his failure to raise them below. We conclude he has waived all of these claims, other than, to a limited extent, his claim that he should have been allowed to testify at the hearing. (*Ochoa*, *supra*, 61 Cal.App.4th at p. 1488, fn. 3.) But even if the claims were not waived, they would still fail, as they have no merit.

### 3. *The Claims Have No Merit*

#### a. *Plaintiff's "Retrial" Claim*

Plaintiff first argues the trial court erred by allowing defendants to argue at the hearing that the evidence established plaintiff was a vexatious litigant, although plaintiff did not dispute he had been declared a vexatious litigant. He asserts this was a "retrial" of his status as a declared vexatious litigant that "seems to run against the plain and unambiguous language of the [vexatious litigant statutes] and the mandate of *Shalant*." and "defies notions of res judicata and collateral estoppel." Also, plaintiff argues he should not have been subjected to such a "retrial" because the previous determinations that he was a "vexatious litigant" were not based on "the same or similar facts" of the current case, as required by section 391, subdivision (b)(4), and the other definitions of a "vexatious litigant" contained in section 391, subdivision (b) apply only to persons appearing in propria persona. (§ 391, subds. (b)(1)-(3).) Finally, he asserts the declaration that he is a "vexatious litigant" amounts to a "permanent branding" that "transcends the distinction between represented and self-represented and prior or future actions."

Most of plaintiff's "retrial" arguments are properly disregarded because they are conclusory and unsupported by legal authority. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Stanley*, *supra*, 10 Cal.4th at p. 793.) Plaintiff also ignores that defendants, in order to win their motion, had the burden of showing he qualified as a "vexatious litigant" under the definitions contained in section 391, subdivision (b). (*Muller II*, *supra*, 2

20

Cal.App.3d at p. 464; §§ 391.1, 391, subd. (b).)  Short of the parties stipulating that he did so—which plaintiff does not contend occurred here—we see no reason why defendants should not be allowed to argue the matter at the hearing to ensure they met their burden.

As for plaintiff's argument that a "retrial" was improper because he did not qualify as a "vexatious litigant" under section 391, subdivision (b), we disagree.  Defendants did not argue he qualified as a vexatious litigant under section 391, subdivision (b)(4), making it irrelevant.  Plaintiff is correct that section 391, subdivisions (b)(1) through (3) refer to persons acting in propria persona, but this has no bearing on whether he could be ordered, as a represented party, to furnish security pursuant to section 391.1.  As already discussed, the analyses and holdings in *Shalant*, *supra*, 51 Cal.4th 1164, *Muller I*, *supra*, 2 Cal.App.3d 438, *Camerado*, *supra*, 12 Cal.App.4th 838, and *Flores*, *supra*, 191 Cal.App.4th 881 make clear he could be ordered to do so.

#### b.  *Plaintiff's Notice Claim*

Plaintiff next argues his due process rights were violated because his counsel "had no reason to suspect the court would broadly construe case law so as to rule plaintiff was subject to the "furnish security" remedy, even though he was represented by counsel. *Muller I, supra*, 2 Cal.App.3d 438 and *Camerado*, *supra*, 12 Cal.App.4th 838, published well before defendants brought their motion, gave him ample notice of this possibility.

#### c.  *Plaintiff's Claim Regarding McKay's Hearing Statements*

Next, plaintiff asserts the trial court erred in allowing defendant McKay, who appeared at the hearing as counsel for defendants, to make improper, unsworn statements about plaintiff's litigiousness in an effort to smear plaintiff and mislead the court. Plaintiff also asserts he had the right to cross-examine McKay.  We conclude, based on our review of the hearing transcript, that McKay did nothing more than properly argue the motion.  And we know of no rule that allows a counsel to be "cross-examined."

#### d.  *Plaintiff's Claim About His Testifying at the Hearing*

Plaintiff also argues the trial court improperly "rebuked" his request to testify.  He contends this was necessary because his counsel, Missud, could not rebut McKay's

21

"unsworn testimony" about the previous action, since Missud was not plaintiff's attorney in that matter, and that the trial court's denial violated the vexatious litigant statutes and plaintiff's due process right to be heard.

Plaintiff's claim ignores that the trial court, while not allowing plaintiff to testify, did allow Missud to make an offer of proof about plaintiff's proposed testimony. After conferring with plaintiff, Missud referred to defendants' contentions about plaintiff's past litigiousness: "[Plaintiff] has reiterated that many of the motions, files, pleadings, cases that McKay has referenced were not in relation to the instant dispute. A portion of them were, of course. [¶] A vast majority of them were family law-related matters and writs, and as of late he has also been very heavily involved in a forced sale of his condominium, which again stems from an illegal and invalid order that was issued on October 19th by Judge Woolard. [¶] [Plaintiff] has pretty much been buried in paperwork, and is creating more paperwork so that he can again redress the geometrically increasing violations of law that have stemmed from Judge Woolard's original order compelling arbitration based on a defunct superceded [*sic*] [TICA]." Nothing in plaintiff's offer related to McKay's characterizations about the prior case. Moreover, it makes little sense that plaintiff's attorney could not address the prior action because he did not represent plaintiff at that time. Attorneys routinely address the facts and circumstances of matters in which they were not involved.

As for plaintiff's right to be heard, section 391.2 provides that the court "shall consider any evidence, written or oral, by witnesses or affidavit, as may be material to the ground of the motion." (§ 391.2.) However, plaintiff fails to explain why he was entitled to testify about the matters raised by Missud in his offer of proof on literally a moment's notice, having first indicated he wanted to testify during the hearing itself. California Rules of Court, rule 3.1306 provides, regarding motions, that "[a] party seeking permission to introduce oral evidence, except for oral evidence in rebuttal to oral evidence presented by the other party, must file, no later than three court days before the hearing, a written statement stating the nature and extent of the evidence proposed to be introduced and a reasonable time estimate for the hearing." (Cal. Rules of Court, rule

22

3.1306(b).)  Plaintiff did not satisfy these requirements.  In light of his failure to do so, and his counsel's limited offer of proof, plaintiff fails to establish the court was required to allow him to testify.

### e.  *Plaintiff's Claim That The Court Could Not Rely on Affidavits*

Next, plaintiff asserts the trial court's grant of defendants' motion lacked any evidentiary basis because the court improperly relied on "hearsay declarations" by defendants Coombs.[8]  As plaintiff acknowledges, section 391.2 provides that the court "shall" consider evidence submitted by "witnesses *or affidavit*, as may be material to the ground of the motion" at the hearing of a "furnish security" motion.  (§ 391.2, italics added.)  Plaintiff nonetheless argues the court's reliance on declarations by Coombs and McKay alone violated his due process rights and the Evidence Code.

Plaintiff is incorrect.  He cites only one case in support of his argument, *Elkins v. Superior Court* (2007) 41 Cal.4th 1337.  The case has no relevance here.  The *Elkins* court ruled that evidence in marriage dissolution *trials* could not be limited to written declarations because such trials were required to follow the same general statutory rules of procedure governing civil trials.  (*Elkins*, at p. 1345.)  The court's decision was based on statutory, not constitutional, considerations regarding trials—statutes that have no relevance to the present case.  (*Ibid*.)

Plaintiff also argues that, while courts are permitted to rely on affidavits in certain motion matters pursuant to Code of Civil Procedure section 2009 (as indicated in *Elkins*, *supra*, 41 Cal.4th at p. 1355), "there is nothing in this statute that authorizes their admission in [vexatious litigant statutes] hearings."  This is incorrect.  Our independent research indicates that "Code of Civil Procedure section 2009 generally permits the use of affidavits in hearings on motions in civil litigation."  (*Estate of Bennett* (2008) 163 Cal.App.4th 1303, 1309.)  Most importantly, and unaddressed further by plaintiff, section 391.2 unambiguously authorizes courts to consider affidavits, including when no

---

[8]  Plaintiff also argues the court could not rely on McKay's "unsworn statements" at the hearing.  We have already determined plaintiff's claim regarding McKay's statements at the hearing lack merit.

23

testimony is presented (since courts may consider "witnesses *or* affidavits." (§ 391.2, italics added.)

In this same discussion section, plaintiff also asserts McKay "mischaracterized" plaintiff's complaint for breach of the CC&Rs as an affirmative defense that was or should have been resolved in the prior action, and proceeds to make various factual assertions without citations to the record. Plaintiff does not explain the relevance of his assertions to whether the court could rule on the motion based on affidavits, cite legal authority, nor cite to the record for his factual contentions. Therefore, we disregard his argument. (*Weller*, *supra*, 233 Cal.App.2d at p. 246; *In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

### f. *We Disregard Plaintiff's Contentions About Prior Litigations*

Finally, plaintiff contends defendants, in arguing that he qualified as a "vexatious litigant" because of his unsuccessful pursuit in propria persona of at least five prior litigations in the preceding seven years, referenced "numerous writs, petitions, and pleadings" that were summarily denied or involved peremptory challenges to a particular judge. According to plaintiff, these should not have been considered as having been finally " 'adversely determined' " against him and, therefore, could not be relied upon to find that he was a "vexatious litigant" pursuant to section 391, subdivision (b)(1).

As we have already indicated, plaintiff has waived this and almost all of the other appellate claims discussed in this subpart by his failure to first raise them in the trial court below. (*Ochoa*, *supra*, 61 Cal.App.4th at p. 1488, fn. 3.) Plaintiff also does not support his factual contentions with proper citations to the record and, therefore, they are properly disregarded. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379.) We thus do not further address these new contentions.

## II. *Case No. A134759*

In Case No. A134759, plaintiff appeals from the trial court's order awarding defendants Coombs and Woods attorney fees as part of their costs.

**A.** *The Relevant Proceedings Below*

After plaintiff's case was dismissed because he did not furnish security, defendants Coombs and Woods moved to fix the amount of attorney fees as an item of costs. They argued they were prevailing parties entitled to recover costs pursuant to section 1032, subdivision (b) and, pursuant to section 1033.5, subdivision (a) (10), entitled to fees under section 15.12 of the TICA. They sought $30,420 in fees.[9]

Plaintiff opposed the motion. He served notice of the oral testimony of each of the defendants, stating they would address matters related to the allegations in his complaint, and sought judicial notice of certain court documents that purportedly proved a propensity of the judicial defendants "to ignore fraud on the court." In his written opposition, he contended there was no contractual basis for awarding attorney fees because the CC&Rs superseded the TICA (which he asserted McKay again had concealed from the court); "the scope of the [TICA] cannot rationally or reasonably be expected to extend to an action brought for a breach of the [CC&Rs];" awarding attorney fees under the terminated TICA would mean "the court will be rearguing the very issue at the heart" of plaintiff's pending appeal of the first action, thereby depriving the appellate court of jurisdiction over the issue"; and there was no statutory basis for an award of attorney fees under the vexatious litigant statutes.[10]

After hearing, the court ordered plaintiff to pay Coombs and Woods $27,000 for prejudgment attorney fees, based on 90 hours of attorney time at a rate of $300 an hour, without further analysis.

**B.** *The Attorney Fees Were Properly Awarded, and are Supported*

As discussed, defendants relied on two statutes and a contractual provision in the TICA in arguing they were entitled to attorney fees as part of their costs. Section 1032,

---

[9] Defendants also submitted a memorandum of costs for $1,310.

[10] Plaintiff also argued defendant's costs memorandum should be dismissed as untimely served and filed, and because it was not verified.

subdivision (b) states, "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032, subd. (b).) Section 1033.5, subdivision (a)(10) allows attorney fees to be included as costs under section 1032, when the fees are authorized by contract. (§ 1033, subd. (a)(10).) Section 15.12 of the TICA states:

"In the event that any dispute between the Parties related to this Agreement or to the Property should result in litigation or arbitration, the prevailing Party in such dispute shall be entitled to recover from the other Party all reasonable fees, costs and expenses of enforcing any right of the prevailing Party, including without limitation, reasonable attorneys' fees and expenses, all of which shall be deemed to have accrued upon the commencement of such an action and shall be paid whether or not such action is prosecuted to judgment. . . . For the purposes of this Section: (i) attorney fees shall include, without limitation, fees incurred in the following: (a) postjudgment motions; (b) contempt proceedings; (c) garnishment, levy, and debtor and third Party examinations; (d) discovery; and (e) bankruptcy litigation, and (ii) prevailing Party shall mean the Party who is determined in the proceeding to have prevailed or who prevails by dismissal, default or otherwise."

The court's order stated it had considered the written and oral arguments of the parties, "and proof having been made to the satisfaction of the court," granted defendants' motion. In short, its order was based on these provisions.

We begin with the observation that plaintiff incorrectly characterizes the court's order as "fee sanctions" and appealable pursuant to section 904.1, subdivision (a)(12), which relates to monetary sanctions, and section 904.1, subdivision (a)(10), which relates to orders made under the Probate Code or Family Code. Neither is a proper basis for his appeal. However, the court's order is appealable pursuant to section 904.1, subdivision (a) as an order made after entry of an appealable judgment, and thus appropriate for review.

**1.** *Plaintiff Has Waived His Civil Code Section 1717 Claim*

26

Plaintiff first argues the trial court erred by imposing "fee sanctions" without considering criteria for determining the prevailing party under Civil Code section 1717. Also, he contends, fees are not permitted under Civil Code section 1717, including because he purportedly voluntarily dismissed the action before trial by not furnishing security.

Although defendants do not raise the issue, plaintiff has waived his Civil Code section 1717 claim. Defendant moved for an award of fees as part of their costs pursuant to sections 1032, subdivision (b) and 1033.5, subdivision (a)(10), and section 15.12 of the TICA. They did not move based on section 1717, nor did plaintiff argue below that the court should consider any provisions of section 1717, including because he purportedly voluntarily dismissed his action. Plaintiff only mentioned section 1717 in his opposition once, without arguing it was a basis for denying defendants' motion. Therefore, he has waived his Civil Code section 1717 claim, and we do not further address it. (*Ochoa*, *supra*, 61 Cal.App.4th at p. 1488, fn. 3; *Benjamin, Weill & Mazer*, *supra*, 194 Cal.App.4th at pp. 53-54.)

### 2. *Plaintiff's Arguments Lack Merit*

In the remainder of his arguments, plaintiff for the most part contends that, as a matter of law, the court erred in ordering him to pay attorney fees because there was not a contractual basis for such an order. We apply a de novo standard of review (*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 705), using settled rules of contract interpretation designed to give effect to the mutual intent of the parties. (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1605.) Where contract language is clear and does not lead to absurd results, we ascertain intent from the written terms alone. (*Ibid*.)

Plaintiff concedes that, pursuant to section 15.12 of the TICA, a party was entitled to recover reasonable attorney fees as a prevailing party in litigation on "any dispute between the Parties related to this Agreement or to the Property." By its plain language, this provision has a broad scope that includes disputes related to the property, not just those limited to the TICA itself. Plaintiff does not contend otherwise. Instead, he argues

27

the court erred in ordering him to pay attorney fees because of the nature of the vexatious litigant statutes and the terms of the TICA, for three independent reasons:

Plaintiff first argues that a dismissal pursuant to the vexatious litigant statutes is not a determination related to either the TICA or the property and, therefore, not within the scope of section 15.12 of the TICA. He correctly points out that the trial court's ruling on defendants' "furnish security" motion cannot be considered to be a determination of any issue in the litigation, or its merits. (§ 391.2.) Therefore, plaintiff asserts, there was no contractual basis for ordering him to pay attorney fees.

Second, plaintiff argues that a motion under the vexatious litigant statues is not a tort claim for which defendants are entitled to attorney fees under section 15.12 of the TICA. Even if the motion were construed to be a tort claim, the parties did not agree to be bound by the vexatious litigant statutes in the TICA.

Third, there is no express or implied agreement under any contract between the parties, including the TICA and CC&Rs, that provides for recovery of attorney fees in litigation under the vexatious litigant statutes or the anti-SLAPP statute (a reference whose relevance is not explained by plaintiff). Plaintiff summarizes his argument as follows:

"[A] dismissal under the [vexatious litigant statutes] precludes the parties from ever reaching the 'merits' of their disputes as to which agreement, the TICA or CC&Rs, applies or was breached. None of the contract claims or contentions related to the dispute over the TICA and the CC&Rs was ever reached. When the merits of the complaint have never been reached because of dismissal under the [vexatious litigant statutes], it cannot reasonably be argued that the 'vexatious litigant motion' is related to the TICA or the CC&Rs. Further, McKay included hundreds of pages of pleadings from other cases submitted to show that [plaintiff] was a 'vexatious litigant.' That 'evidence' relates not to the present contract action or dispute but to previous actions and was submitted to establish [plaintiff's] status as a 'vexatious litigant.' "

Plaintiff's arguments fail for multiple reasons. First, much of his arguments are conclusory, unaccompanied by citations to legal authority or the record. For example, he

presumes that section 15.12 of the TICA does not extend to the dismissal in the present case without much explanation or discussion; such deficient argument is properly disregarded. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

Second, the arguments are unpersuasive for a simple reason: section 15.12 of the TICA plainly provides for a prevailing party to recover attorney fees upon dismissal of an action that results from a dispute between the parties related to the TICA or the property. The plain language of section 15.12 indicates this includes a prevailing party's recovery of attorney fees "*whether or not such action is prosecuted to judgment*," and includes those parties who are "determined in the proceeding to have prevailed or *who prevails by dismissal, default or otherwise*." (Italics added.) This language unambiguously indicates a party is entitled to attorney fees if they prevail by dismissal *for any reason* (i.e., "by dismissal . . . or otherwise") of a qualifying action. This includes a dismissal pursuant to section 391.4 resulting from a plaintiff's failure to furnish security, as was the case here. Plaintiff's legal arguments fail in the face of this unambiguous language.

Finally, plaintiff argues in a single paragraph in his opening brief that defendants were not entitled to recover attorney fees pursuant to section 1033.5 and the TICA because the TICA terminated and was superseded by the CC&Rs. Once more, his argument is conclusory, unaccompanied (except for a single, unexplained reference to Civ. Code, § 1352) by citations to legal authority or the record. Such deficient argument is properly disregarded. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.)

Plaintiff does devote more than a dozen pages to this subject in his reply brief, interspersed with inappropriate ad hominem attacks on McKay for his work as attorney for the defendants. We disregard these additional arguments for three reasons. First, much of it is conclusory and unaccompanied by citations to law or the record. (*In re S.C.*, *supra*, 138 Cal.App.4th at p. 408; *Grant-Burton*, *supra*, 99 Cal.App.4th at p. 1379; *Stanley*, *supra*, 10 Cal.4th at p. 793.) Second, plaintiff presented a very limited amount of argument to the trial court, thereby waiving the remainder. (*Ochoa*, *supra*, 61

Cal.App.4th at p. 1488, fn. 3.) Third, and most importantly, plaintiff has tardily made these additional arguments in his reply brief, rather than his opening brief, without providing good cause for doing so. (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3.)

## DISPOSITION

The orders appealed from are affirmed. Defendants are awarded costs of appeal.

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Haerle, J.