[No. F025931. Fifth Dist. Feb. 10, 1998.]

DELIA OCHOA, Plaintiff and Appellant, v.
PACIFIC GAS AND ELECTRIC COMPANY, Defendant and Respondent.

## COUNSEL

Canelo, Hansen, Wilson, Wallace & Padron and A. B. Canelo for Plaintiff and Appellant.

Diehl, Steinheimer, Riggio, Haydel & Mordaunt and P. Gary Cassel for Defendant and Respondent.

## OPINION

**BUCKLEY, J.—**

### FACTS

In February 1992, appellant toured a house for sale in Merced, California. During the tour, appellant noticed a strange odor which she mentioned to Jan Weiss, the real estate agent. Weiss told her that the smell was caused by the carpet. Appellant took several of her friends to view the house. Two friends also noticed the strong smell. One identified the smell in the basement as gas.

Before purchasing the house, appellant asked the sellers to have it inspected for a gas leak. She was told by Ms. Weiss that gas lines in the house had been checked by a local plumber. The house was also serviced by Pacific Gas and Electric Company (PG&E) employee Wayne Turner. Turner later declared that he performed a soap test on the fittings of the gas heater. He did not detect any "fuzz leaks" in the water heater fixtures and did not smell any gas in the basement.

In May of 1992, appellant moved into the house. The smell persisted over the next 11 months. It was noted by appellant and by visitors to the home. Appellant claimed that within a few weeks of moving into the house her preexisting bronchitis, asthma and allergy conditions worsened. She developed lethargy and flu-like symptoms.

In February of 1994, appellant's son discovered a small gas leak on the gas meter outside the house. Appellant immediately called PG&E. Leon Cooksey responded and fixed the gas leak on the outside of the gas meter. Cooksey discovered two small fuzz leaks in the basement near appellant's water heater. Cooksey applied sealant and tightened the fittings.

After the repair of the gas leaks, appellant contends the smell suddenly disappeared. Her health began to improve, and the fatigue and flu-like symptoms alleviated.

Appellant filed a first amended complaint against PG&E and Advanced Plumbing in the Merced County Superior Court on August 1, 1994. The complaint alleges two causes of action based on negligence and premises liability theories. The first cause of action asserts that as a direct result of defendants' negligent failure to discover the gas leak her "breathing condition deteriorated and her preexisting bronchitis was aggravated." The second

cause of action incorporates by reference the first cause of action and alleges that defendants interfered with "the comfort, enjoyment of life and property of the Plaintiff, a private nuisance . . . ."

On February 1, 1996, PG&E filed a motion for summary judgment. It argued that there were no triable issues of fact whether there existed a gas leak inside her house, or whether the alleged gas leak had caused or exacerbated appellant's illnesses. Respondent proffered numerous declarations, including those of Randall C. Baselt, Ph.D., and Thomas A. Raffin, M.D.

Dr. Baselt is a licensed toxicologist. He declared that exposure to methane gas has no direct toxic respiratory effect short of asphyxiation and that appellant's exposure to trace amounts of odorants added to methane gas would have to involve considerably larger quantities than those evidenced in her home to cause any adverse respiratory effects.[1] According to appellant's medical records, her worst allergy and asthma symptoms occurred in the spring and the fall. This is consistent with environmental allergies which are typically at their worst in the spring and fall. Thus, it was his expert opinion that there was no causal link between appellant's injuries and her alleged exposure to methane gas and/or any odorant.

Dr. Raffin is a board certified pulmonary specialist. He is familiar with methane gas. It was his opinion that appellant's alleged exposure to methane gas and/or odorants could not be, and indeed was not, the cause of any of her claimed injuries. Exposure to methane gas and/or the odorants added to methane gas would not have caused or aggravated appellant's allergies or asthma. Dr. Raffin concluded that "the aggravation of plaintiff's asthma and allergies was most likely due to her move from an apartment, where there was little adjacent plant life, to her present home in Merced. Also, plaintiff testified at her deposition that she used potpourri to make her home smell better. This could be a source of aggravation for her asthma and allergies." He also declared that there was no causal connection between the alleged exposure to methane gas and/or the odorants added to methane gas and her flu-like symptoms, ear and hearing problems, fatigue or depression.

In opposition, appellant submitted the declaration of her treating physician, Dr. Mohan P. Reddy. Dr. Reddy, board certified in the treatment of allergies and immunology, declared: "That in connection with my treatment of Ms. Ochoa, assuming that her medical history is correct, and assuming

---

[1] Throughout the proceedings below and on appeal, it is assumed that the gas involved was methane. Other than Dr. Reddy's reference to nitrogen dioxide, discussed *post*, no assertion is made of any other type of gas.

further that there was a gas leak at her home that she moved into in approximately May of 1992, and assuming further that that gas leak prevailed from that time until it was discovered by a PG&E Technician in February 1994, and assuming further that a PG&E Technician shut off all of the gas leaks at her home, both at the meter and in her basement, and assuming further that Ms. Ochoa's health improved thereafter in connection with her respiratory problems as per her statements to Declarant and Dr. Johnston, it is my opinion that if those circumstances are correct, then it is my feeling that the gas leak she experienced in her home probably aggravated her respiratory problems. In other words, assuming all of the above facts to be correct, I do not know of any more medically probable cause for the aggravation of Dee Ochoa's respiratory problems between May of 1992 and February 1994, other than the gas leaks at her home." She also filed declarations executed by various friends and coworkers of appellant indicating that they too smelled a strong odor in the home prior to the repair of the gas leak.

On March 22, 1996, the court granted the motion for summary judgment. It reasoned:

"PG&E, in support of its motion, submitted evidence that refuted a necessary element of plaintiff's cause of action, namely proximate causation. This evidence included the declarations of Dr. Thomas A. Raffin, an internist and specialist in pulmonary care, and Dr. Randall C. Baselt, a toxicologist. Both experts' declarations laid a foundation that established their familiarity with the properties of methane gas and its effects, and both experts stated that methane gas does not, by its nature, cause the types of injuries plaintiff claims to have suffered. Moreover, both experts stated that methane gas has no known adverse respiratory effect, short of asphyxiation.

"Plaintiff, in opposition to PG&E's motion, submitted the declarations of plaintiff, and three laywitnesses: Esther Swiger, Betty Ortega, Cynthia McIntosh. The declarations of these laywitnesses are insufficient to refute the expert testimony submitted by PG&E.

"Plaintiff also submitted the declaration of Dr. Mohan P. Reddy, her allergist. However this declaration failed to establish that Dr. Reddy had any specialized knowledge about the properties and effects of methane gas, and was unclear as to whether Dr. Reddy's testimony concerned the effects of methane gas or nitrogen dioxide, which was not present in this case. Dr. Reddy's declaration failed to rebut the testimony of PG&E's experts that methane gas does not cause the types of injuries plaintiff alleged.

"Ultimately, plaintiff's evidence was not sufficient to raise a triable issue of fact regarding lack of proximate causation."

## DISCUSSION

██ "To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citations]. [Citation.] The defendant 'must show that under no possible hypothesis within the reasonable purview of the allegations of the complaint is there a material question of fact which requires examination by trial.' [Citation.]

"The moving defendant bears the burden of proving the absence of any triable issue of material fact, even though the burden of proof as to a particular issue may be on the plaintiff at trial. [Citation.] . . . Once the moving party has met its burden, the opposing party bears the burden of presenting evidence that there is any triable issue of fact as to any essential element of a cause of action." (*Sanchez* v. *Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465 [55 Cal.Rptr.2d 415].) ██ The reviewing court "exercises its independent judgment in determining whether there are no triable issues of material fact and the moving party thus is entitled to judgment as a matter of law." (*Id.* at p. 1466.)

██ Appellant argues grant of summary judgment was erroneous because Dr. Reddy's declaration was sufficient to raise a triable issue of fact regarding the cause of her physical ailments. We concur with both the trial court's reasoning and its legal conclusion. Dr. Reddy's declaration is equivocal and speculative; he has no expertise in the relevant subject matter. The declaration is insufficient to rebut the unequivocal testimony of two qualified experts that, even assuming there was a leak of methane gas into her home, this exposure could not have caused the respiratory distress and flu-like symptoms. Dr. Reddy's "feeling" that the leak of some unspecified gas "probably aggravated her respiratory problems," because he does "not know of any more medically probable cause" is insufficient to create a triable issue of fact.

*Morgenroth* v. *Pacific Medical Center, Inc.* (1976) 54 Cal.App.3d 521 [126 Cal.Rptr. 681] (hereafter *Morgenroth*) is instructive. There, plaintiff suffered a stroke during a cardiac procedure and filed a medical malpractice against the treating physician. The appellate court upheld a judgment of nonsuit entered at the close of plaintiff's case.[2] Dr. Kerth had been plaintiff's sole medical witness. He opined that the stroke, "was *more* probably a complication from the internal mammary visualization procedure than a *coincidence*." (*Id.* at p. 532.) The appellate court held that this testimony "is at best

---

[2]A motion for nonsuit or a directed verdict is comparable to a motion for summary judgment. Such a motion is a modern equivalent to a demurrer to the evidence. (7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 416, p. 477.) Nonsuit may be granted only when there

speculative and conjecture and falls short of meeting the 'probability' standard of proximate cause." (*Id.* at p. 533.)

*Jones* v. *Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396 [209 Cal.Rptr. 456], which relied in part on *Morgenroth*, is likewise instructive. There, the reviewing court also upheld grant of nonsuit following plaintiff's presentation of evidence in a medical malpractice suit. Plaintiff had alleged that a precancerous condition from which she suffered had been caused by Ortho-Novum SQ oral contraceptives. At trial, Dr. Catlin testified that there was a reasonable medical possibility that the drug contributed to the development of the condition. Dr. Policar testified that he thought the drug " 'may have been a contributing factor for the progression of' " the disease. (*Id.* at p. 401.) The reviewing court characterized this testimony as "highly conjectural and ambiguous" and concluded that it was insufficient to raise a triable issue of fact as to proximate cause. (*Id.* at p. 402.) The court explained, "[t]he law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case." (*Ibid.*) Further, "[t]he fact that a determination of causation is difficult to establish cannot, however, provide a plaintiff with an excuse to dispense with the introduction of some reasonably reliable evidence proving this essential element of his case." (*Id.* at p. 403.) The court's study of the record convinced it "that the only reasonable inference which can be drawn from the evidence is that the proximate cause of plaintiff's condition remains unknown and unproved." (*Id.* at p. 404.)

As will be explained, just as in *Morgenroth* and *Jones*, appellant proffered no credible evidence rebutting PG&E's showing that methane gas could not have caused or exacerbated appellant's ailments. Dr. Baselt is a toxicologist; he is familiar with the properties of methane gas and methane gas odorants. He declared that "[e]xposure to methane gas has no direct toxic respiratory effect, short of asphyxiation." Thus, in his opinion there cannot be a causal link between appellant's alleged respiratory injuries and exposure to methane gas. Moreover, he declared that, contrary to Dr. Reddy's "suggest[ion]," appellant's symptoms could not be caused by nitrogen dioxide as that gas is produced by the combustion of methane gas.

Dr. Raffin is a board certified internist, pulmonary and critical care medical specialist. He has published over 170 articles and 60 chapters or

is no substantial conflict in the evidence. In ruling on a motion for nonsuit, the trial court is not to consider the credibility of witnesses. It gives to the evidence of the party against whom the motion is directed all legitimate inferences and disregards all conflicting evidence. Unless it can be said as a matter of law that no other reasonable conclusion is deducible, the trial court is not justified in granting such a motion. (7 Witkin, Cal. Procedure, *supra*, § 419, p. 480.)

monographs on the subjects of pulmonary and critical care medicine. He specifically declared that he is familiar with the properties of methane gas and odorants. He declared that "exposure to methane gas and/or the odorants added to methane gas would not have caused, nor have aggravated, plaintiff's allergies nor her asthma condition." He also declared that her flu-like symptoms could not have been caused by methane gas exposure. It was his opinion that the aggravation of her respiratory condition was "most likely due to her move from an apartment, where there was little adjacent plant life, to her present home in Merced."

Dr. Reddy's declaration was insufficient to raise a triable issue of fact. He declared that it was his feeling that a "gas leak" probably exacerbated her respiratory problems. This declaration is deficient in three respects. First, the declaration does not provide any basis on which one could conclude that Dr. Reddy was familiar with methane gas or any other type of gas. He does not aver that he is familiar with the diagnosis or treatment of individuals who have been exposed to methane gas. He describes no experience, special knowledge or education relating to methane gas, its composition or effects. There is no evidence that his certification as an allergist included training in this area. Thus, his opinion lacks foundation.

Second, Dr. Reddy did not express his opinion with any reasonable degree of medical certainty. He merely hypothesizes that because he knows of no other probable cause for her symptoms, he "feels" that the leak of some unspecified gas is "probably" the culprit for the increase in the severity of her respiratory problems. Such speculation is insufficient to rebut the definitive testimony of PG&E's experts that exposure to methane gas could not have caused appellant's symptoms. Further, the declaration does not reference the alleged flu-like symptoms or depression and it does not respond to PG&E's showing that the exacerbation of her ailments was probably due to an increase in environmental allergens resulting from her move to a house where she was exposed to more adjacent plant life and by her use of potpourri.

Finally, it appears that Dr. Reddy was laboring under a misconception as to the type of gas to which appellant alleged she had been exposed. Incorporated into Dr. Reddy's declaration is a letter he had written to appellant's primary treating physician, Dr. Johnson. In this letter he notes the possibility that appellant had been exposed to a leak of *nitrogen dioxide* in her home and that this exposure could have exacerbated her respiratory illnesses. However, he does not address Dr. Baselt's expert opinion that nitrogen dioxide is produced during the *combustion* of methane gas. In his declaration Dr. Reddy speaks only of the "gas leak" without specifying the type of gas

to which she was allegedly exposed. Reading both documents together, it appears that Dr. Reddy's opinion is based on the mistaken conclusion that appellant was exposed to nitrogen dioxide and not simple methane gas.

In sum, the trial court correctly concluded that PG&E provided competent declaratory evidence showing that methane gas cannot cause or exacerbate the ailments from which appellant suffered. Appellant failed to provide evidence adequate to create a triable issue of fact on this essential element. (*Morgenroth, supra,* 54 Cal.App.3d at p. 533; *Jones* v. *Ortho Pharmaceutical Corp., supra,* 163 Cal.App.3d at p. 402.) It is therefore irrelevant whether appellant raised a triable issue of fact with regard to the existence of the alleged gas leak in the home.[3]

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondent.

Dibiaso, Acting P. J., and Vartabedian, J., concurred.

---

[3]Appellant mentions that she also alleged that she suffered damages other than the specific physical injuries, and therefore summary judgment should not have been granted. This point, premised on the debatable assumption that appellant adequately alleged damages other than her physical injuries, was not raised in appellant's opposition papers or during argument below. Hence, it was neither considered nor ruled upon by the trial court. It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal. (*Santantonio* v. *Westinghouse Broadcasting Co.* (1994) 25 Cal.App.4th 102, 113 [30 Cal.Rptr.2d 486]; *In re Marriage of Modnick* (1983) 33 Cal.3d 897, 913, fn. 15 [191 Cal.Rptr. 629, 663 P.2d 187]; cf. *Soderberg* v. *McKinney* (1996) 44 Cal.App.4th 1760, 1765, fn. 4 [52 Cal.Rptr.2d 635].) Moreover, the point is also not developed on appeal. The contention is contained within a single brief paragraph. Appellant did not formulate a coherent legal argument nor did she cite any supporting authority. "When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary." (*Landry* v. *Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 [46 Cal.Rptr.2d 119]; see also *People* v. *$31,500 United States Currency* (1995) 32 Cal.App.4th 1442, 1455, fn. 18 [38 Cal.Rptr.2d 836]; *Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706, 710-711 [152 Cal.Rptr. 65].)