Filed 7/27/21  Ramirez v. Millard Mall Services CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| BLANCA RAMIREZ,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MILLARD MALL SERVICES, INC., et al.,<br><br>        Defendants and Appellants. | B305062<br><br>(Los Angeles County Super. Ct. No. 19STCV24167) |

        APPEAL from an order of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Affirmed.

        Wilson Elser Moskowitz Edelman & Dicker, Steven J. Joffe, Robert Cooper, and Ashley Morris, for Defendants and Appellants.

        Law Office of Vahe Hovanessian and Vahe Hovanessian for Plaintiff and Respondent.

Blanca Ramirez (Ramirez) sued her former employer, defendant and appellant Millard Mall Services, Inc. (Mall Services), and an individual defendant at the company. Defendants moved to compel arbitration, which Ramirez opposed on the ground that she was never presented with an arbitration agreement and never consented to arbitration during her all-digital hiring process at the company. The trial court held an evidentiary hearing, at which Ramirez and a Mall Services human resources employee testified, and the court denied the motion to compel because it found there was insufficient proof Ramirez agreed to arbitrate disputes. We are principally asked to decide whether Mall Services has made the difficult showing that no substantial evidence supports the trial court's ruling.

## I. BACKGROUND

Mall Services is a company that provides janitorial services at shopping malls. From 2007 to 2009 and from 2011 to 2014, Ramirez worked for Mall Services as a "project manager," a salaried position that required her to manage janitors paid on an hourly basis and to perform janitorial services herself.

In July 2016, Mall Services rehired Ramirez as one of its project managers. Two years later, after sustaining a work-related injury and requesting a disability-related accommodation, Mall Services terminated Ramirez's employment with the company. Ramirez later sued Mall Services and her former supervisor, asserting a wrongful termination claim and a variety of other causes of action.

## A.    *Defendants' Motion to Compel Arbitration*

Defendants moved to compel arbitration of Ramirez's civil action, claiming she had agreed as an express condition of employment to arbitrate all claims arising out of her employment.  Defendants' motion was supported by a declaration by Mall Services' director of human resources Gina Fritz (Fritz).

Fritz declared that when Ramirez rejoined the company in 2016, she completed an all-digital onboarding process via a third-party vendor, myStaffingPro.  According to Fritz's declaration, Ramirez was sent an email with a link to Mall Services' portal on myStaffingPro's website; Ramirez was required to create a unique username and password; and the web-based process would then take Ramirez through a review of company policies, some of which required electronic initialing—including an agreement to arbitrate all claims arising out of her employment with Mall Services (the Arbitration Policy).  Fritz explained that after the policy review, the website directed Ramirez to a policy acknowledgement form that requires users to type their name, confirm they reviewed all documents, and affirmatively agree to all polices disclosed, including the Arbitration Policy, via an electronic signature.

Also submitted with Mall Services' motion were several documentary exhibits, including a copy of the Arbitration Policy and a printout of an electronically signed policy acknowledgement form.  The Arbitration Policy submitted was four pages long and provided for arbitration of specified claims arising out of a Mall Services employee's employment or termination.  The final page of the policy included a line for an employee to sign beneath a declaration attesting that the employee had carefully read the agreement, had an opportunity

3

to seek advice from an attorney, and was "giving up [his or her] right to a jury trial" by "signing this agreement." The employee signature line was blank, however, on the copy of the Arbitration Policy Mall Services submitted. The policy acknowledgement form Mall Services submitted, however, included a list of eight policies, including the Arbitration Policy, with boxes next to each for a user to electronically initial. The text on the form above the list of policies stated: "Below are the organization's policy forms. Each form is a link that can be opened, downloaded, saved, and/or printed. Once you have reviewed each policy document you will be asked to enter your initials to confirm that you have read the Policy Form." The initials "ber" were included in the boxes next to each policy, including the Arbitration Policy. The typed name "Blanca Ramirez," an electronic signature for Blanca Estela Ramirez, and a date, were included at the bottom of the policy acknowledgement form beneath text stating: "I have viewed and agreed to all policies disclosed."

### B.     Ramirez's Opposition

Ramirez opposed the motion to compel arbitration. Her opposition did not dispute she completed the electronic onboarding process via myStaffingPro in 2016. But the opposition maintained the Arbitration Policy was never presented for her review and consent during that process. The opposition further emphasized the Arbitration Policy and policy acknowledgement form were not produced to her when Mall Services complied with her earlier request for a copy of her personnel file; apparently on that basis, the opposition asserted "the documents presented by Defendants are fabrications recently attempted to be injected into this case."

4

In a declaration supporting her opposition, Ramirez stated she did not agree to arbitration when completing the electronic onboarding process. She declared she retained a copy of all the documents she signed as part of the onboarding process in 2016 and there was no copy of the Arbitration Policy in her personal file. Ramirez also explained that when she requested and received a copy of her personnel file from Mall Services after she was fired, the documents the company gave her did not contain a copy of the Arbitration Policy. In addition, Ramirez noted there was no reference to arbitration in the employee handbook she received when she rejoined the company in 2016.

### C.    *Defendants' Reply and Ramirez's Sur-Reply*

In their reply, defendants did not address Ramirez's contention that mandatory arbitration was not mentioned in the employee handbook she received. Instead, they focused on Ramirez's fabrication allegation. They argued Ramirez's allegation was based solely on speculation and was contrary to what they argued were undisputed facts: Ramirez admitted she used the onboarding process to rejoin Mall Services in 2016, the onboarding process required the generation of a unique username and password, and computer audit reports established Ramirez consented to the company's policies, including mandatory arbitration of all claims.

In response, Ramirez filed a sur-reply that attached a copy of an executed policy acknowledgement form of another employee, Cindy Zuniga Navarrete (Navarrete). Navarrete's form was electronically signed in August 2017, more than a year after Ramirez rejoined Mall Services. Navarrete's form

referenced almost twice as many documents, but it did not contain an arbitration agreement.

### D. *The Trial Court Hears Live Testimony at an Evidentiary Hearing and Denies the Motion to Compel Arbitration*

In December 2019, the trial court held an evidentiary hearing to resolve factual discrepancies in defendants' motion to compel arbitration and Ramirez's opposition. Fritz (Mall Services' human resources director) and Ramirez were the only two witnesses to testify, and the trial court admitted in evidence copies of the Arbitration Policy and the policy acknowledgement form that were identical to those submitted with defendants' motion to compel arbitration.

#### 1. *Fritz's testimony*

In a manner consistent with her declaration, Fritz described the electronic hiring process that Mall Services had in place when Ramirez was hired in 2016—including, of greatest relevance for our purposes, the electronic initialing and signing of the policy acknowledgement form. It was clear from Fritz's testimony and the associated exhibits that the text of the Arbitration Policy would display only if a candidate for employment affirmatively clicked on the link to that policy; Fritz testified the system intentionally did not require a signature on the Arbitration Policy itself (or any of the other policies) "[j]ust really to save time for the candidates." Instead, the form required prospective employees to simply initial next to each item in the list on the policy acknowledgement form and to electronically sign that form at the bottom.

6

Fritz also testified that once an employee completed the electronic onboarding process there was "no way to back-edit a candidate's records." On cross-examination, however, Fritz did concede that between the time Ramirez completed the process and the hearing, "many system enhancements" had been made to the process, some of which affected how electronic signatures displayed on printed out documents.

Fritz also described Mall Services' onboarding process more generally. She testified there were nine separate onboarding processes to accommodate differences in state law, as well as different classes of employees (e.g., union versus non-union employees or salaried, managerial employees versus non-managerial employees paid on an hourly basis). In 2016, when Ramirez was rehired, only one of the electronic onboarding processes, the one for salaried managers like Ramirez, required an arbitration agreement. An arbitration agreement was added to all of the other onboarding processes near the end of 2017, which is why the policy acknowledgment form for Navarrete, an hourly employee hired in mid-2017, did not reference such an agreement.

As for why a hard copy of the Arbitration Policy was not included in the copy of the personnel file produced to Ramirez at her request, Fritz stated the omission was an "oversight." She explained Mall Services did not as a matter of course print a hard copy of every document from the electronic onboarding process and include those copies in the employee's personnel file because one of the purposes of the electronic system was to "eliminate paper"; consequently, when a copy of Ramirez's personnel file was produced, it did not include any of the reviewed documents from

7

the onboarding process, not just the Arbitration Policy.

### 2.    *Ramirez's testimony*

Ramirez also testified in a manner consistent with her declaration.  She conceded she completed Mall Services' electronic onboarding process in 2016 and, on the policy acknowledgement form, clicked to view all the policies listed on her screen, initialing boxes and signing where required.  She disputed, however, that the Arbitration Policy was listed among the documents for her to review and accept, and she denied she ever agreed to arbitration.  When asked whether it was possible that the Arbitration Policy was among the documents made available to her during the onboarding process but she simply did not remember, Ramirez said that was not possible "because [she] studied law, worked with attorneys, and . . . notice[d] those kind of things immediately."

Ramirez also testified, without challenge from defendants, that the employee handbook she was given as a Mall Services employee made no mention of an arbitration agreement.  She testified the first time she became aware of Mall Services' arbitration policy was later in November 2017, when she saw a reference to an arbitration agreement while assisting another employee with the onboarding process.  Ramirez also testified that when she sought assistance "troubleshooting" problems with the electronic onboarding process she encountered as a manager responsible for shepherding the hiring of other employees, she was told the human resources department and myStaffingPro had the ability to "rescind" an employee's information because

8

the system did not process it properly, as well as to make other changes.[1]

### 3. *The trial court's ruling*

The trial court accepted written closing arguments from both sides after the evidentiary hearing and later issued an order denying defendants' motion to compel arbitration. The court ruled defendants had not met their burden to show it was "more likely than not that [Ramirez] electronically signed off on the terms of an arbitration agreement when she was rehired in July 2016." Explaining, the court added: "There is insufficient proof of a conscious execution of an agreement by [Ramirez] to arbitrate her employment disputes with . . . defendant[s]. Defendant[s] did not adequately explain why such a critical document [the Arbitration Policy] was not in [Ramirez's] personnel file when she reviewed it."

## II. DISCUSSION

On appeal, defendants advance three arguments for reversal; two are easily dismissed and the third, which challenges the sufficiency of the evidence to support the trial court's ruling that defendants did not prove the existence of an arbitration

---

[1] Defendants objected to this testimony on hearsay grounds. The trial court did not rule on the objection and defendants did not request a ruling or re-raise their objection in their subsequent written closing argument. The objection was accordingly forfeited. (See, e.g., *Flatley v. Mauro* (2006) 39 Cal.4th 299, 306, fn. 4.)

9

agreement, fails under the deferential standard of review we employ.

A.  *Defendants' Argument that Ramirez Impliedly Consented to Arbitration by Continuing to Work at Mall Services Is Forfeited and the Argument that the Court's Ruling Runs Afoul of the Federal Arbitration Act Is Meritless*

Defendants argue Ramirez impliedly consented to the Arbitration Policy because she continued working for Mall Services after learning in 2017 that an agreement to arbitrate had been made a condition of employment for all employees. Defendants, however, did not make this argument in the trial court and it cannot be made now on appeal.  (*Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 417 (*Sea & Sage*); accord, *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [because appellant did not raise the issue of nonphysical damages in her "opposition papers or during argument below," the issue "was neither considered nor ruled upon by the trial court.  It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal"].)  We do have discretion to excuse the forfeiture, but we exercise that discretion "most frequently . . . when 'important issues of public policy are at issue.'  [Citations.]"  (*Sea & Sage, supra*, at 417.)  That is not the case here, and we accordingly decline to consider defendants' implied consent argument.

Defendants also argue the trial court evaluated whether there was mutual assent to the Arbitration Policy using a standard different than the standard the court would use when

10

considering objective mutual assent to a contract generally—a violation of the Federal Arbitration Act, as defendants see it. The entire premise for this argument is the trial court's use of the phrase "conscious execution of an agreement" when explaining why the court believed defendants had not carried their burden to prove mutual assent to arbitration.

Defendants' argument reads far too much into the trial court's turn of phrase. The modifier "conscious" may not be strictly necessary, but nor is it problematic: it adds nothing of substance (of course someone executing an agreement must be conscious—and that applies to any agreement) and in context it is used merely to emphasize (in the same way the word "actually" would) that the court disbelieved Ramirez assented to the Arbitration Policy under all of the attendant circumstances. The trial court's diction does not reveal a Federal Arbitration Act violation. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 ["it is a cardinal principle that arbitration under the FAA 'is a matter of consent, not coercion.' [Citation.] Thus, "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"'"]; *Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60; *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348, 357 ["the FAA does not apply until the existence of an enforceable arbitration agreement is established under state law principles involving formation, revocation and enforcement of contracts generally"].)

11

*B.     Substantial Evidence Supports the Trial Court's Determination That Defendants Did Not Prove Ramirez Agreed to Arbitration*

Coming to the real crux of defendants' gripe with the trial court's ruling, they argue no substantial evidence supports the trial court's determination that they did not carry their burden to prove Ramirez assented to the Arbitration Policy.  The thrust of their argument is that Ramirez's recollection of the onboarding process was insufficient to contradict or impeach Fritz's testimony authenticating Ramirez's electronic consent to the Arbitration Policy, particularly when Ramirez presented no expert testimony of her own.  The question is thus a factual one, and defendants' argument fails because substantial evidence supports the determination the trial court made after holding an evidentiary hearing.  (See, e.g., *Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 966 [whether mutual assent to arbitration existed is a question of fact and evaluated using the substantial evidence standard of review] (*Martinez*).)

When viewed through the substantial evidence lens, the question we must resolve is an easy one.  Even putting Ramirez's testimony aside, the trial court was entitled to simply disbelieve Fritz's testimony about how the onboarding process worked or whether it was possible to alter an employee's personnel documents after the onboarding process was complete.  (See, e.g., *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 859 ["we presume the court found every fact and drew every permissible inference necessary to support its judgment or order, and we defer to the court's determination of credibility of the witnesses and weight of the evidence in resolving disputed facts"]; *Martinez, supra*, 51 Cal.App.5th at

12

966-967 [relying on an implied credibility finding by the trial court]; see also *In re Resendiz* (2001) 25 Cal.4th 230, 249 ["any factual determinations made below 'are entitled to great weight . . . when supported by the record, particularly with respect to questions of or depending upon the credibility of witnesses the [superior court] heard and observed"], disapproved on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356, 369-370.) So disbelieved, that alone would doom defendants' effort to compel arbitration.

Ramirez did testify, however, and that made the issue at best a she-said-she-said dispute. The trial court could reasonably decide to credit Ramirez's testimony—the only party who could say from personal knowledge what actually appeared on her computer screen when completing the digital onboarding process—over Fritz's testimony about how the onboarding process was designed to operate or typically operated. (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052 ["Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding"]; accord, *Jensen v. BMW of North America, Inc.* (1995) 35 Cal.App.4th 112, 134 ["the testimony of a single witness, even the party [it]self, may be sufficient" to constitute substantial evidence]; see also Evid. Code, § 411 ["the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact"].) Indeed, there was testimony from both Fritz and Ramirez that established there were nine separate onboarding processes used by Mall Services—only one of which at the time of Ramirez's hiring required an employee's consent to mandatory arbitration—and it was uncontested that Ramirez's employee handbook made no reference to arbitration. This was

13

evidence lending further support to Ramirez's adamant testimony that she had not been presented with an arbitration agreement when completing the hiring process. In addition, Ramirez contradicted Fritz's testimony that it was not possible to alter onboarding forms after initial completion and the trial judge, who saw and heard the witnesses testify, again was entitled to disbelieve Fritz's account. Resting on any or all of these reasons, there is substantial evidence supporting the trial court's factual finding that there was no mutual assent to arbitration.

The facts in *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047 (*Espejo*), the case chiefly relied on by defendants to seek reversal, are significantly different from the facts here. Most significantly, there was no evidentiary hearing held by the trial court in *Espejo* and the trial court denied the motion to compel in that case not because it made a determination on disputed facts but because it erroneously (as the Court of Appeal held) excluded a supplemental declaration filed by the defendant that described the electronic hiring process. (*Id.* at 1051, 1060.) Further, the issue in *Espejo* was merely one of authentication—whether the defendant sufficiently authenticated the signature on an electronically completed agreement covering dispute resolution (*id.* at 1062)—whereas here there is no authentication issue. Ramirez does not deny signing the policy acknowledgement form electronically, she denies only that the Arbitration Policy was among the documents presented to her for agreement. Nothing in *Espejo* is therefore inconsistent with the conclusion we have already drawn: substantial evidence supports the trial court's finding that there was no mutual assent to arbitration.

14

## DISPOSITION

The order denying defendant's motion to compel arbitration is affirmed.  Ramirez is awarded any costs on appeal she may have incurred.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.


We concur:


RUBIN, P. J.


KIM, J.