Filed 5/24/23  P. v. Zaragoza CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

<table>
<tr><td>THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>TOMAS LUCIO ZARAGOZA,<br><br>Defendant and Appellant.</td><td>E079723<br><br>(Super.Ct.No. INF1701367)<br><br>OPINION</td></tr>
</table>

APPEAL from the Superior Court of Riverside County.  Timothy F. Freer, Judge.  Affirmed.

Tomas Lucio Zaragoza in pro. per.; Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

## STATEMENT OF THE CASE

On April 22, 2021, a third amended information charged defendant and appellant Thomas Lucio Zaragoza with deliberate and premeditated attempted murder (Pen. Code,[1] §§ 664 and 187, subd. (a); count 1); participating in a criminal street gang (§ 186.22, subd. (a); count 2); and assault with a firearm (§ 245, subd. (a)(2); count 3). The information also alleged that defendant discharged a firearm causing great bodily injury or death under sections 12022.53, subdivision (d), and 1192.7, subdivision (c)(8), as to count 1; and that defendant used a firearm under sections 12022.5, subdivision (a), and 1192.7, subdivision (c)(8), as to count 3. Moreover, the information alleged that in the commission of counts 1 and 3, defendant caused great bodily injury under sections 12022.7, subdivision (a), and 1192.7, subdivision (c)(8), and committed the offense for the benefit of a criminal street gang under section 186.22, subdivision (b)(5). Additionally, the information alleged that defendant committed counts 1 and 3 for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in any criminal conduct by gang members under section 186.22, subdivision (b)(5), as to count 1, and section 186.22, subdivision (b)(1)(B), as to count 3. The information further alleged that defendant had one prior strike conviction under sections 667, subdivisions (c) and (e)(1), and 1170.12, subdivision (c)(1), and a serious prior offense under section 667, subdivision (a).

---

[1] All statutory references are to the Penal Code unless otherwise specified.

On April 28, 2021, a jury found defendant guilty of participating in a criminal street gang (count 2). The jury deadlocked on counts 1 and 3 and the trial court declared a mistrial as to those counts.

On April 27, 2022, a fourth amended information was filed that alleged the same charges as the third amended information, without the gang allegations as to counts 1 and 3.[2] On May 23, 2022, a jury found defendant guilty of counts 1 and 3, and that all allegations, other than deliberation and premeditation, were true. Defendant then waived a jury trial on the priors. On May 24, 2022, the trial court found that defendant had suffered the priors as alleged.

At a sentencing hearing on June 9, 2022, defendant moved for a new trial on count 2 in response to amendments made to section 186.22. The prosecutor stated that the People would no longer be able to convict defendant of count 2, and moved to dismiss the charge and the gang enhancements. The trial court granted both motions. The sentencing hearing for this case was continued.

At the continued sentencing hearing on August 31, 2022, the trial court denied defendant's motion to dismiss the prior and enhancement findings. The court then proceeded to sentence defendant to a total term of 27 years and four months, followed by 25 years to life.

On September 2, 2022, defendant filed a timely notice of appeal.

---

[2] The fourth amended information still included count 2 for clerical reasons.

# STATEMENT OF FACTS

On July 26, 2017, defendant and his girlfriend (girlfriend) went to The Block Bar (the Block) with three of defendant's friends.  Girlfriend testified that she picked up defendant and his friends and took them to the Block.  They arrived at 7 or 7:30 p.m. After girlfriend had a sip of her drink, defendant started to argue with her.  Girlfriend chose to leave; she left the Block around 8 p.m.  Defendant later called girlfriend and asked her to pick him up.  She went back to the Block around 9:30 p.m.  When girlfriend returned to the Block, she saw defendant with the same three friends, "seated in a booth/table area that [they] had sat in previously."  She joined them.

When asked about the demeanor of defendant and his friends that night, girlfriend responded, "They had been drinking all day, so they were pretty messed up already," and they were acting aggressively and cocky.

That same night, the victim and his wife went to the Block; they sat at the bar. The victim got a "bad vibe" from defendant's friends, who were sitting at a table; defendant was outside smoking.  When the victim walked by the table on his way to the bathroom, they all stared at him.  The victim planned to leave after he was done going to the bathroom.

Girlfriend saw the victim and his wife enter the Block.  One of defendant's friends made a "cat call."  Girlfriend stated that the noise by defendant's friend "would be disrespectful to the woman, especially when she's in the presence of her significant other," and derogatory.  Girlfriend went outside with defendant about five minutes after the victim and his wife entered the Block.

After the victim came out of the bathroom, one of defendant's friends was standing outside the door. The victim said "what's up," and walked around him; he went back to the bar and told his wife he wanted to leave. As they headed toward the door, defendant's friends tried to cut them off. After a brief verbal exchange, one of defendant's friends swung at the victim. The victim dodged the first punch. The other friends started punching the victim, who "covered up" and backed out of the Block. He then saw one of the men reach for a pool stick. The victim grabbed the stick out of the friend's hand and took a batter's stance with the stick; the victim did not hit anyone.

Girlfriend, who was outside with defendant, heard a noise from inside the Block and saw the altercation between the victim and defendant's friends. Girlfriend told defendant and he went inside.

The victim saw defendant come through the door, pull a gun from his waist, and then take a shooting stance. The victim instinctively put his hand up to grab defendant's gun. Defendant shot the victim through his hand. The victim turned and ran, but was shot again in the abdomen. The victim had five intestinal surgeries as a result of the shooting.

A witness at the Block was waiting to pay his tab when he saw the victim trying to leave and defendant's three friends going after the victim. After the first shot, the witness saw the victim running and trying to get behind the bar. Defendant was shooting at the victim as he ran. The witness saw the victim get shot again and crawl behind the bar. The witness stopped looking at the shooter when the witness was hit in his left foot by bullet fragments from one of the bullets fired by defendant. A few days later he went to

the hospital to have the bullet fragments removed.  The injury was painful and kept him from being able to fully perform his duties at work for some time.  The injury still hurt on occasion.

According to defendant, after he was done smoking his cigarette outside the Block, he opened the door and saw the victim hitting one of his friends with a pool stick.  When defendant walked up to the victim, the victim was holding the pool stick in a "batter's position."  Defendant said "kick back," and pulled up his shirt to show the victim that he had a gun.

The victim tried to grab the gun from defendant and the two of them fought over it.  During the struggle, the gun went off and the victim ran.  Defendant thought the victim broke defendant's gun and that it was jammed.  Defendant believed that other patrons at the Block were going to jump him to stop him from using the gun.  In an effort to protect himself, he fired another five or six times toward the floor and back wall.  Defendant shot because he believed one of his friends would be killed or seriously injured if he did not.

**DISCUSSION**

After defendant appealed, and upon his request, this court appointed counsel to represent him.  Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and has requested this court to undertake a review of the entire record.  Pursuant to *Anders*, counsel identified the following issues to assist the court in its search of the record for error:

1. "Was it error for the trial court to instruct the jurors they could consider gang evidence on the issue of appellant's intent to kill, and if so, was appellant prejudiced by that error?"

2. "Did the trial court err when it denied appellant's motion to dismiss enhancements?"

We offered defendant an opportunity to file a personal supplemental brief. On May 12, 2023, defendant filed a three-page handwritten brief.

In the brief, defendant contends that his trial counsel rendered ineffective assistance of counsel because "he refused to hire private investigator, gang expert, medical examiner[.] He refused to call witnesses to the stand. He did not object to D/A witnesses taking the stand after they admitted to being under the influence, having criminal record, lying to police and lieing [*sic*] on the stand during trial." Defendant also appears to argue that he was prejudiced because the trial court allowed "the people [to] lie on the stand[d]," and he was in "waist chains when the jury walked in." Moreover, defendant argues that he should have been granted his motion for new trial.

Notwithstanding these allegations, defendant failed to provide any argument or authority for his arguments. Where a point is merely asserted, "without any [substantive] argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion." (*People v. Ham* (1970) 7 Cal.App.3rd 768, 783, overruled on another ground in *People v. Compton* (1971) 6 Cal.3rd 55, 60, fn. 3.) "Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we consider the issues waived." (*Jones v. Superior Court* (1994) 26

7

Cal.App.4th 92, 99.) Accordingly, we deem defendant's argument to be waived by his failure to provide any coherent, substantive argument supported by law or the record. (*Ibid.*; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 ["When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"]; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [contention was deemed waived because "[a]ppellant did not formulate a coherent legal argument nor did she cite any supporting authority"]; *Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1301, fn. 2 ["The dearth of true legal analysis in [appellant's] appellate briefs amounts to a waiver of the [contention] and we treat it as such"].)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error. We find no error.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

Acting P. J.

We concur:

CODRINGTON

J.

MENETREZ

J.

8