Filed 1/15/26  Giannini v. Gold's Gym California CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOSEPH ROBERT GIANNINI,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>GOLD'S GYM CALIFORNIA, LLC et al.,<br><br>        Defendants and Respondents. | B346720<br><br>(Los Angeles County Super. Ct. No. 23SMCV03707) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Michael E. Whitaker, Judge.  Affirmed.

        Joseph Robert Giannini, in pro. per., for Plaintiff and Appellant.

        Alexis Law Firm, Drew L. Alexis and Wendy K. Shiff for Defendants and Respondents.

_____

Plaintiff Joseph Robert Giannini appeals a grant of summary judgment disposing of all his claims against Gold's Gym California, LLC, RSG Group USA, Inc. (Respondents), and Jeff Suender (Suender). Respondents own the Gold's Gym in Venice, California. Suender is the gym's manager. Because Giannini cannot raise a genuine dispute of material fact sufficient to defeat the showing in support of summary judgment, we affirm.

## BACKGROUND

### A. Factual History

Giannini has exercised at Respondents' gym in Venice since 1987. In 1997, he executed a form authorizing the electronic transfer of funds from his checking account to pay Respondents a onetime fee of $135 and $29 monthly in dues. The form bears a handwritten notation that states: "Dues frozen at $29.00 for lifetime membership."

In 2015, Giannini obtained health insurance coverage from Blue Shield of California. Soon thereafter, Giannini learned of a Blue Shield program called "Silver Sneakers," available as a benefit through Medicare supplemental insurance, that paid the monthly gym fees for policyholders age 65 and older. He signed up for the Silver Sneakers program, and his $29 monthly dues were paid through the program beginning in December 2016. In 2023, Giannini moved his medical coverage from Blue Shield to Kaiser Permanente.

Kaiser offered a similar program called "Silver & Fit" that also paid gym membership dues for individuals age 65 and older. But the Silver & Fit program was operated in conjunction with a program called "Active & Fit" for individuals age 13 and older

2

that paid discounted monthly dues for its participants. Beginning in approximately 2009, Respondents participated in both Silver Sneakers and Silver & Fit. But Respondents discontinued Silver & Fit in 2021. As a result, the Silver & Fit program was not available to Giannini to pay his monthly dues at the Venice gym when he enrolled in Kaiser.

Respondents' decision to drop the Silver & Fit program was due to their dissatisfaction with Active & Fit. The Active & Fit discount was approximately 75 percent below the cost of regular monthly dues, and its popularity was causing the Venice gym a significant loss of revenue. Although Respondents were dissatisfied with the Active & Fit program, they could not drop it alone. The corporate manager of the Active & Fit and Silver & Fit plans required participating gyms to offer both programs. So, Respondents could not quit one plan and keep the other. As a result, when they discontinued Active & Fit, they also discontinued Silver & Fit.

The Venice gym was the only Gold's Gym in California affected by this decision. Giannini was told by Suender that he could access other gyms in the area through the Silver & Fit program, just not the Venice gym. He was also told that in order to continue his membership in the Venice gym outside the Silver Sneakers program, he was required to pay dues of $100 monthly. Giannini rejected this proposal. He wanted to resume his membership at $29 per month. It was the gym's position that Giannini's voluntary enrollment in the Silver Sneakers program cancelled his prior lifetime $29 per month membership. Giannini filed suit.

3

## B. Procedural History

Giannini's second amended complaint asserts three causes of action against Respondents and Suender. They are: (1) age-related, veteran's status or disability discrimination in violation of the Unruh Civil Rights Act, Civil Code section 51 et seq. (Unruh Act); (2) engaging in an unlawful or unfair business practice as proscribed by Business and Professions Code section 17200 (section 17200); and (3) issuing false corporate documents in violation of Corporations Code section 1507 (section 1507). After they answered the complaint, Respondents and Suender moved for summary judgment.

The trial court granted the motion. With respect to the Unruh Act claim, the court determined Respondents and Suender had met their burden to show the decision to withdraw from the Silver & Fit program in 2021 was supported by legitimate business reasons, and was unrelated to customer age, veteran's status or disability. In opposing summary judgment, Giannini was unable to demonstrate a triable issue of material fact supporting either discriminatory intent or impact. His evidence largely focused on whether he had a lifetime agreement, and whether that agreement was in fact cancelled when the gym enrolled him in the Silver Sneakers program. Because there was no dispute of material fact regarding discrimination supporting the Unruh Act claim, Respondents and Suender were entitled to judgment.

Giannini's section 1507 claim fared no better. First of all, there was some confusion over whether Giannini had voluntarily dismissed this cause of action. He had filed a notice of intent to dismiss it, and his opposition to summary judgment did not directly address section 1507. Nevertheless, out of an abundance

4

of caution, the court addressed the merits. It determined Giannini was unable to raise a genuine dispute of fact regarding whether Respondents and Suender knowingly issued or published false documents, and whether Giannini was injured by relying on them. Accordingly, summary judgment was proper on this claim.

Because the section 17200 claim turned on whether any injury suffered by Giannini was due to an unfair or unlawful practice, he could not possibly prevail because he failed to show an unlawful, unfair or fraudulent practice on either his Unruh Act or section 1507 cause of action.

After concluding summary judgment was warranted on all three causes of action in Giannini's second amended complaint, the court entered judgment in favor of Respondents and Suender. Giannini's appeal is timely.

## DISCUSSION

### A. The Standard of Review

"'To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citations]. [Citation.] The defendant "must show that under no possible hypothesis within the reasonable purview of the allegations of the complaint is there a material question of fact which requires examination by trial." [Citation.] [¶] The moving defendant bears the burden of proving the absence of any triable issue of material fact, even though the burden of proof as to a particular issue may be on the plaintiff at trial. [Citation.] . . . Once the moving party has met its burden, the opposing party

5

bears the burden of presenting evidence that there is any triable issue of fact as to any essential element of a cause of action.'" (*Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1485 (*Ochoa*).)

"In reviewing the propriety of a summary judgment, the appellate court must resolve all doubts in favor of the party opposing the judgment. [Citation.] The reviewing court conducts a de novo examination to see whether there are any genuine issues of material fact or whether the moving party is entitled to summary judgment as a matter of law." (*M.B. v. City of San Diego* (1991) 233 Cal.App.3d 699, 703–704.) "We accept as true the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them. [Citation.] However, to defeat the motion for summary judgment, the plaintiff must show "'specific facts,'" and cannot rely upon the allegations of the pleadings." (*Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 805.) "While '[s]ummary judgment is a drastic procedure, should be used with caution [citation] and should be granted only if there is no issue of triable fact' [citation], it is also true '[j]ustice requires that a defendant be as much entitled to be rid of an unmeritorious lawsuit as a plaintiff is entitled to maintain a good one.'" (*M.B. v. City of San Diego*, at p. 704.)

## B.  The Unruh Act

Giannini argues Respondents' decision to discontinue the Silver & Fit program was age discrimination in violation of the Unruh Act.[1]  He relies on *Candelore v. Tinder, Inc.* (2018)

---

[1]  Although Giannini's second amended complaint included allegations of Unruh Act discrimination based upon veteran's status and disability, his appellate briefs address only age-based

6

19 Cal.App.5th 1138 to argue a business's quest for profit cannot excuse age discrimination, and Respondents engaged in age discrimination because he was a senior citizen when they cancelled his lifetime membership.

"Age discrimination may violate the [Unruh] Act if used as an arbitrary class-based generalization. Although the Act sets forth several categories of persons covered by the statute, the Supreme Court of California has deemed these express categories as illustrative rather than restrictive, and has construed the Act to apply to several unexpressed classifications based on personal characteristics. [Citation.] Courts have found age to be a category that, although not mentioned in the Act, may be a characteristic reached by the Act when it is used as an arbitrary class-based generalization. [Citations.] However, the courts treat age classification differently from categories enumerated in the statute. There is no general prohibition against all age-based discrimination or preferential treatment, as there is with the categories expressly mentioned in the Act." (*Pizarro v. Lamb's Players Theatre* (2006) 135 Cal.App.4th 1171, 1174–1175.)

In support of summary judgment, Respondents and Suender provided evidence showing the decision to discontinue the Silver & Fit program was neither arbitrary, nor did it result in a class-based distinction. Instead, it was motivated by a concern over lost revenue due to the popularity of the discounts

---

discrimination. Thus, we will not address possible discrimination based upon veteran's status or disability. (See *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 ["When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration"].)

7

offered by Active & Fit. The cancellation of Silver & Fit was not due to members' age. Gym members age 65 and older could remain members at the Venice gym, either by paying their dues directly or through the Silver Sneakers program. There was no evidence Giannini was excluded from gym membership or treated differently than other gym members due to his age. Moreover, Respondents discontinued their participation in Silver & Fit in 2021, long before Giannini moved his health insurance to Kaiser. So, the decision to drop the plan could not have been age discrimination directed at Giannini.

In light of Respondents and Suender's showing, it was Giannini's burden to present evidence showing a triable issue of fact over whether the decision to drop the Silver & Fit program was due to an age-based generalization, and not for legitimate business reasons. (*Ochoa, supra,* 61 Cal.App.4th at p. 1485.) To do this, Giannini argues that documentation concerning his gym membership that was produced by Suender was riddled with errors and was falsified. He says he had a lifetime membership that was breached when Respondents terminated Active & Fit. Giannini also faults Respondents for terminating both Silver & Fit and Active & Fit without prior notice to members. Approximately 475 gym members were affected by the decision, and between 30 and 50 of them were seniors enrolled in Silver & Fit. He says other gyms still accept Silver & Fit.[2]

---

[2] Giannini does not challenge the trial court's rulings sustaining the objections to much of his evidence offered in opposition to summary judgment. "As a result, any issues concerning the correctness of the trial court's evidentiary rulings have been waived. [Citations.] We therefore consider all such

All of this is beside the point. As the trial court correctly observed, the issue is not whether Respondents actually cancelled Giannini's lifetime membership, but whether in doing so they acted with discriminatory intent or their actions had a discriminatory impact. Senior citizens still remain gym members and a very small number of them were affected by the decision to cancel Silver & Fit. Giannini was treated the same as all these other customers. Moreover, the decision to drop the program was made to stop a loss of revenue, not to draw a distinction among customers based on age. It was done two years before Giannini switched his health insurance to Kaiser and sought to use the Silver & Fit program.

Giannini is unable to raise an issue of material fact regarding the discriminatory intent or impact of Respondents' decision to cancel the Silver & Fit program. He cannot overcome Respondents and Suender's showing that the program was cancelled for a legitimate business reason, and not as the result of any arbitrary classification. "Unruh Act issues have often been decided as questions of law on demurrer or summary judgment when the policy or practice of a business establishment is valid on its face because it bears a reasonable relation to commercial objectives appropriate to an enterprise serving the public." (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1165 [holding abrogated by statute].) "In [such] case[s], the particular business interests of the purveyor in maintaining order . . . and protecting a business reputation or investment were recognized as sufficient to justify distinctions among its

---

evidence to have been properly excluded." (*Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1014–1015.)

customers." (*Id.* at p. 1162; see *Frantz v. Blackwell* (1987) 189 Cal.App.3d 91, 95–96.)

The simple fact is that Respondents' decision to cancel Silver & Fit was not based on Giannini's age. So, *Candelore v. Tinder, Inc., supra,* 19 Cal.App.5th 1138, relied upon by Giannini, has no application here. "Age discrimination, like discrimination on the basis of the categories expressly set forth in the [Unruh] Act, is illegal if it is arbitrary, unreasonable or invidious." (*Javorsky v. Western Athletic Clubs, Inc.* (2015) 242 Cal.App.4th 1386, 1400.) No such thing happened in this case.

## C. Corporations Code Section 1507

Corporations Code section 1507 provides a damages remedy against certain corporate representatives for individuals who rely upon and are injured by any materially false statements in corporate documents. Respondents were granted summary judgment on this claim advanced in Giannini's second amended complaint.

Giannini does not contest the basis for the court's grant of summary judgment. Instead, he argues that because he attempted to dismiss this cause of action prior to the summary judgment hearing, he was prejudiced by the court's analysis of it on the merits. His argument goes something like this: Because the court analyzed this claim and determined there is no showing Respondents intentionally falsified corporate records or knowingly distributed false records, its reasoning carried over to its analysis and prejudiced his other claims. Nonsense.

There is nothing in this record to show the trial court's consideration of Giannini's Unruh Act or section 17200 cause of action was affected because it addressed Corporations Code section 1507.

## D. Business and Professions Code Section 17200

Giannini argues the trial court erred when it granted summary judgment on this claim because section 17200 "imposes strict liability," and the court was therefore wrong to judge his section 17200 claim under the standards for liability required of the Unruh Act.

Giannini's assertion that section 17200 imposes strict liability is true as far as it goes (see *Cortez v. Purolator Air Filtration Products Company* (2000) 23 Cal.4th 163, 181), but it only presents part of the picture. "'"By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable."' [Citation.] 'Virtually any law—federal, state or local—can serve as a predicate for a [section 17200] action.' [Citation.] When a statutory claim fails, a derivative [section 17200] claim also fails." (*Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1185.)

As we have explained, the trial court correctly granted summary judgment on Giannini's Unruh Act and Corporations Code section 1507 causes of action. His Business and Professions section 17200 claim also fails.

11

## DISPOSITION

The judgment is affirmed.  Respondents and Suender are awarded costs on appeal.


SIGGINS, J.*

WE CONCUR:


LUI, P. J.


RICHARDSON, J.

---

*       Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.